IN THE MATTER OF THE REQUEST FOR SOLID WASTE
UTILITY CUSTOMER LISTS.

Superior Court of New Jersey
Appellate Division

Argued October 15, 1985—Decided November 19, 1985.

Before Judges MORTON I. GREENBERG, LONG and HA-VEY.

*Robert K. Walsh* argued the cause for appellants on Schedule A (*Carella, Byrne, Bain & Gilfillian* attorneys; *Arthur Vanderbilt, II* on the brief).[1]

*Joseph Rosa, Jr.*, argued the cause for appellants on Schedule C (*Michael F. Riccardelli*, attorney).

*Dennis A. Estis* argued the cause for appellants on Schedule G (*Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein*, attorneys; *Dennis A. Estis* on the brief).

*Scerbo, Kobin, Litwin & Wolff*, attorneys for appellants on Schedule D (*Arthur R. Kobin* on the brief).

*Frank W. Gasiorowski*, attorney for appellants on Schedule H.

*Vincent J. Dotoli*, attorney for appellants on Schedule B.

*John A. Gonnella*, attorney for appellants on Schedule F.

---

[1] Lists of the appellants represented by each attorney having entered appearances are attached as Schedules A–D, F and G to appellants' joint brief.

*Cindy K. Miller,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Cindy K. Miller* on the brief).

The opinion of the court was delivered by

HAVEY, J.A.D.

Appellants, the Waste Management Association, the National Solid Waste Management Association, and 92 individual solid waste collection companies, appeal from the April 1, 1985 order of the Board of Public Utilities (Board) which requires solid waste utilities to provide the Board with a complete list of all their customers, including the rates charged, rate schedules applied and the frequency and type of service supplied. The order requires the customer lists to be updated semi-annually. It provides that the lists would not be made available for inspection or use by other utilities or the public. The order had originally been promulgated on November 30, 1984 without the provision making the customer lists confidential. Because of objections filed by appellants, implementation of the order was suspended, a hearing was held on March 20, 1985 and the order was reconsidered. The order was reissued on April 1, 1985 with the provision making the customer lists confidential.

Appellants challenge the order, arguing that the Board had no authority to issue it; that it must be vacated since it was entered without adequate notice and evidentiary hearing; that it requires the disclosure of confidential "trade secrets" and is therefore an unlawful "taking" of a property right, and that the order provides no adequate safeguard to ensure the confidentiality of the "trade secret" information. We affirm.

Appellants argue that the production of the information sought can be compelled only as an incident to a pending or contemplated inquiry or investigation of a matter affecting a public utility. *See N.J.S.A.* 48:2–19 and 48:2–36.1. Since no such inquiry or investigation is present here, they argue that no

statutory authority exists for the "sweeping demand" made by the April 1, 1985 order. The argument, in our view, ignores the Board's broad regulatory and rule-making authority to protect the public interest. Under the general provisions of Title 48 of the Revised Statutes, the Board is vested with supervisory and regulatory jurisdiction and control over all public utilities, including utilities involved in sewer, solid waste collection and solid waste disposal. *N.J.S.A.* 48:2–13. It is empowered to fix just and reasonable rates, *N.J.S.A.* 48:2–21(b)1, and modify existing rates it finds to be "... unjust, unreasonable, insufficient or unjustly discriminatory or preferential." *N.J.S.A.* 48:2–21(b)1. It may direct its officers and employees to inspect and examine books and records of any utility respecting any matter within its jurisdiction not privileged in a judicial proceeding, *N.J.S.A.* 48:2–16.2, and may investigate "... upon its own initiative ... any matter concerning any public utility[.]" *N.J. S.A.* 48:2–19a. It is empowered to compel the production of a utility's books and records and any data relevant to any inquiry, investigation or proceeding undertaken by the Board. *N.J.S.A.* 48:2–36.1.

The Solid Waste Utility Control Act of 1970, *N.J.S.A.* 48:13A–1, *et seq.*, recognized the compelling need to regulate the economic aspects of solid waste collection and disposal. *N.J. S.A.* 48:13A–2. Prior to the act, the solid waste industry was "... composed of numerous scavengers, serving overlapping territories ... [and] fraught with the potential for abuse in the form of favoritism, rigged bids, official corruption, and the infiltration of organized crime." *In re Application of Saddle River*, 71 *N.J.* 14, 22 (1976). The act complemented the Board's general powers over utilities by granting the Board specific authority to designate franchise areas in the solid waste industry, *N.J.S.A.* 48:13A–5; issue certificates of public convenience and necessity, a condition precedent to engaging in the business, *N.J.S.A.* 48:13A–6; regulate rates, *N.J.S.A.* 48:13A–4, and approve tariffs, *N.J.S.A.* 48:13A–6.1. It authorizes the Board to compel production of contracts, books, and records, "...

necessary to enable the Board to administer its duties as prescribed by law and this act." *N.J.S.A.* 48:13A–11. The act prohibits monopolies in the solid waste business and prescribes civil and criminal penalties for violations of the act. *N.J.S.A.* 48:13A–10 and 48:13A–12.

We are entirely satisfied that this pervasive legislative scheme provides ample authority for the Board to compel production of the data sought by the April 1, 1985 order, even absent a pending inquiry of a particular utility or utilities. Legislative grants of jurisdiction to the Board have traditionally been liberally construed to grant the widest range of regulatory and investigatory power over utilities subject to its jurisdiction. *Barry v. Arrow Pontiac, Inc.*, 100 *N.J.* 57, 70–71 (1985); *Public Utilities Bd. v. Helen Kramer San. Landfill*, 171 *N.J.Super.* 500, 505 (App.Div.1979). The powers expressly granted are in turn attended by "... those incidental powers which are reasonably necessary or appropriate to effectuate the specific delegation." *New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 562 (1978); *see also In re New Jersey Bd. of Public Utilities*, 200 *N.J.Super.* 544, 557 (App.Div.1985).

The information sought is unquestionably necessary to ensure the efficiency of solid waste collecting and disposal, and to prevent underpricing, monopolies, and other practices inimical to the public interest. *See State v. Scioscia*, 200 *N.J.Super.* 28, 40 (App.Div.1985), certif. den. 101 *N.J.* 277 (1985). The order is prophylactic in nature, intending to prevent anti-competitive acts and practices before they begin. It is abundantly clear that disclosure to the Board of the type of information sought is critical to the Board's recognition of potential anti-competitive practices. It would severely compromise the Board's power to protect the public interest to require an anti-competitive practice to develop first before the Board could compel disclosure of the critical data as part of an inquiry or investigation. We conclude that the Board was empowered to enter the April 1, 1985 order.

■ We also reject appellants' claim that the order must be vacated because it was entered without adequate notice and evidentiary hearing. We know of no statutory or regulatory requirement that a public hearing be held before the filing of certain data is required by the Board or an investigation is initiated. *See In re Application of Waterfront Com.*, 32 *N.J.* 323, 334–335 (1960). Moreover, the matter does not qualify as a "contested case" under *N.J.S.A.* 52:14B–2(b), since no factual issues are implicated by the Board's exercise of its broad investigatory powers. *See Bally Mfg. Corp. v. N.J. Casino Control Comm'n*, 85 *N.J.* 325, 334 (1981), app. dism. 454 *U.S.* 804, 102 *S.Ct.* 77, 70 *L.Ed.*2d 74 (1981). In any event, appellants were given ample opportunity after November 30, 1984 to protest the order in writing and at the hearing held by the Board on March 20, 1985, prior to final adoption of the order.

■ Appellants next contend that the information sought constitutes privileged trade secrets and is therefore protected from disclosure under *N.J.S.A.* 48:2–16.2 which permits Board officers and employees to inspect "... all books ..., records and memoranda kept by any public utility ... *which would not be privileged in any judicial proceeding.*" [Emphasis supplied]. They also argue that the Board's order constitutes an unlawful "taking" of a property right.

We find appellants' argument unpersuasive for several reasons. Firstly, *N.J.S.A.* 48:13A–11, which applies specifically to solid waste utilities, allows for the production of contracts, books, "... and all the documents necessary to enable the Board to administer its duties as prescribed by law and this act." Of significance is the absence of any privilege exception, as exists in *N.J.S.A.* 48:2–16.2, to the Board's power to compel production of books and records. We view the absence of such exception as a clear legislative expression that the Board's power to investigate the economic aspects of the solid waste industry under *N.J.S.A.* 48:13A–11, because of pervasive abuses existing prior to the act, was intended to be broader and more

far-reaching than that authorized under *N.J.S.A.* 48:2–16.2. The broader power is sensible in light of the clear public health and environmental concerns attributable to the solid waste industry, not necessarily apparent in conventional utilities.

Secondly, we need not resolve the question of whether the customer lists constitute trade secrets. Even if the lists are trade secrets to which appellants enjoy property rights, *see New Jersey State Chamber of Commerce v. Hughey*, 600 *F.Supp.* 606, 626 (D.N.J.1985), aff'd in part, rev'd and remanded on other grounds 774 *F.*2d 587 (3d Cir.1985); *Sun Dial Corp. v. Rideout,* 16 *N.J.* 252 (1954), we know of no legal constraint to the State's right to compel disclosure if disclosure is rationally related to a compelling, legitimate governmental interest. Not only may the State compel disclosure under this test, but there are absolutely no legal restraints to the State's use of the materials unless appellants' "reasonable investment-backed expectation" that the materials will be maintained in confidence, or the economic impact upon appellants resulting from disclosure, outweighs the State's interest in protecting the public good. *Ruckelshaus v. Monsanto Co.,* 467 *U.S.* 986, 104 *S.Ct.* 2862, 81 *L.Ed.*2d 815, 834 (1984); *see also New Jersey State Chamber of Commerce v. Hughey, supra,* 600 *F.Supp.* at 627. Here the governmental interest in compelling production of the information is clear. Further, the Solid Waste Utility Control Act has no provision which expressly provides for the confidentiality of trade secrets. *Cf. N.J.S.A.* 34:5A–15 (provides for the protection from disclosure of a trade secret to the public under Worker and Community Right to Know Law); *N.J.S.A.* 17:23–14 (makes all financial reports filed by insurance companies with the Commissioner of Insurance confidential). Thus, appellants had no "reasonable investment-backed expectation" when they became regulated utilities that the Board would maintain business-related information in confidence. Moreover, we are entirely satisfied that appellants' expressed concern of potential economic impact upon the solid waste industry resulting from disclosure cannot prevail over the State's significant interest in protecting the public welfare.

Thirdly, we cannot say that there is a "taking" when, as here, the public agency expressly provides that the information submitted is not to be made available for inspection or use by the public. The condition which precludes inspection by the public of the customer lists, in our view, clearly provides the confidentiality necessary to protect the appellants from the "unfair, cut-throat competition" and "raiding" by other collectors and haulers which appellants suggest will occur if the customer lists are submitted to the Board. We have been given absolutely no reason to doubt the Board's ability to provide the necessary safeguards to ensure that confidentiality is maintained.

■ Finally, we reject appellants' assertion that once the lists are filed, they shall constitute "public records" under either *N.J.S.A.* 47:1A–1, *et seq.*, or the common law, and thus be subject to public scrutiny. The lists are not required by law "... to be made, maintained or kept on file ..." by the Board. *N.J.S.A.* 47:1A–2; *see Nero v. Hyland,* 76 *N.J.* 213, 220 (1978); *D'Elena v. Burlington County Bd.,* 203 *N.J.Super.* 109, 115 (App.Div.1985). The Board's order was an administrative directive, clearly not coequal to a statute or regulation, and thus are not public records within *N.J.S.A.* 47:1A–2. *See Irval Realty v. Bd. of Pub. Util. Commissioners,* 115 *N.J.Super.* 338 (App.Div.1971), aff'd 61 *N.J.* 366 (1972). Nor can the lists be deemed public records under the common law right to know, since they are clearly not written memorials, made by a public officer authorized by law to make them. *See McClain v. College Hospital,* 99 *N.J.* 346, 354 (1985); *Irval Realty v. Board of Pub. Util. Commissioners,* 61 *N.J.* 366, 372 (1972).

We conclude that the Board has the statutory power to compel the information sought by its April 1, 1985 order; that even if the customer lists constitute trade secrets, there is no privilege against inspection by the Board, and that the customer lists do not constitute public records under either *N.J.S.A.* 47:1A–1, *et seq.*, or the common law.

We affirm.