982 A.2d 459 (2009)
410 N.J. Super. 371
Martin O'SHEA, Plaintiff-Respondent,
v.
TOWNSHIP OF WEST MILFORD, Defendant-Appellant.
DOCKET NO. A-1185-08T3
Superior Court of New Jersey, Appellate Division.
Argued June 3, 2009.
Decided November 9, 2009.
*461 Thomas B. Hanrahan, argued the cause for appellant (Thomas B. Hanrahan & Associates, attorneys; Mr. Hanrahan, of counsel and on the brief; Nicholas P. Milewski, on the brief).
Richard Gutman, argued the cause for respondent.
Bobby Conner, argued the cause for amici curiae American Civil Liberties Union of New Jersey Foundation and North Jersey Media Group, Inc. (Edward L. Barocas, Jeanne LoCicero, Mr. Conner, and Jennifer A. Borg, Hackensack, attorneys and on the brief).
Before Judges RODRÍGUEZ, LYONS and KESTIN.
The opinion of the court was delivered by
KESTIN, J.A.D. (retired and assigned on recall).
A Law Division order, entered on August 8, 2008, declared that defendant, the Township of West Milford, had violated the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, by refusing to provide plaintiff, Martin O'Shea, with "a copy of the requested Use of Force Reports [from its police department,] specifically those involving an arrest or where charges were brought[.]" The trial court ordered defendant to grant plaintiff "access to the requested Use of Force Reports in unredacted form, except for the names of subjects not arrested; on those cases where there was an arrest made or where charges were made." In a subsequent order, entered on October 22, 2008, the trial court denied defendant's motion for reconsideration as having no adequate basis. Pending appeal, the trial court stayed the prior order and deferred a ruling on plaintiff's application for an award of costs and attorney's fees. Defendant appeals from both orders "except for portions regarding the award of attorney's fees."
Plaintiff is a former resident of the Township. On March 20, 2008, invoking OPRA and the common law, he asked the Township for access to "[a]ll Use of Force reports on file with the Township and/or its police department pertaining to use of force incidents occurring in 2006, 2007 and 2008." On March 31, 2008, the Township Clerk denied plaintiff's request in a letter, stating:
The records you requested, use of force reports, are considered criminal investigatory records and as such are exempt from disclosure under OPRA. In GRC [Government Records Council] *462 complaint # 2004-151, Kenneth Serrano v. New Brunswick Police Department, [GRC Complaint No. 2004-151 (Apr. 14, 2005)] the GRC ruled that use of force forms are "exempt from disclosure as criminal investigatory records pursuant to N.J.S.A. 47:1A-1.1."
The Township nevertheless gave plaintiff "a summary report ... that the police department provides to a county prosecutor in accordance with the Use of Force guideline."[1] The summary was "not specific" and did not include either the names of the officers or the subjects of the use of force.
The matter came before the trial court on plaintiff's verified complaint and order to show cause. After hearing the arguments of the parties, Judge Brogan decided the matter in favor of plaintiff. He recited his reasons in oral opinions disposing of the initial motion and the motion to reconsider. On the issues before us in this appeal, we affirm primarily for the well-considered reasons stated by Judge Brogan; and we remand for further proceedings.
In the face of the statutory requirements that "government records shall be readily accessible[,]" N.J.S.A. 47:1A-1, and that "any limitations on the right of access ... shall be construed in favor of the public's right of access[,]" ibid., Judge Brogan held that Use of Force Reports (UFRs) are not exempt from the general disclosure requirements of OPRA as criminal investigatory records under N.J.S.A. 47:1A-1.1. Judge Brogan found that the Township had failed to prove that any of the requested documents pertained to criminal investigations. He opined that it was not within OPRA's design to render documents inaccessible as criminal investigatory records merely because they might "result in either an internal affairs investigation and/or criminal recordcriminal charges against the police officer.... I don't believe that was the intent of OPRA[.]"
Judge Brogan also held that access to UFRs is not limited under the exceptions to the general disclosure principle of the statute that are contained in N.J.S.A. 47:1A-3. One such exception applies to government records that "pertain to an investigation in progress by any public agency." N.J.S.A. 47:1A-3(a). Access to records involved in on-going investigations is not automatic, and "may be denied if the inspection, copying or examination of such record or records shall be inimical to the public interest." Ibid. (emphasis added). On the other hand, access cannot be prohibited "to a record of that agency that was open for public inspection, examination or copying before the investigation commenced." Ibid.
Furthermore, under the statute, "information concerning a criminal investigation," such as "information of the circumstances immediately surrounding [an] arrest," is available to the public for immediate access, "including but not limited to the time and place of the arrest, resistance, if any, pursuit, possession and nature and use of weapons and ammunition by the suspect and by the police[.]" N.J.S.A. 47:1A-3(b). Such records must be released unless the information "will jeopardize the safety of any person or jeopardize any investigation in progress or may be otherwise inappropriate to release[.]" Ibid.
In his oral opinion disposing of the motion for reconsideration, Judge Brogan *463 amplified his reasons for granting plaintiff's request for access. He said that the UFRs at issue did not qualify as criminal investigatory records both because they were not created as part of an investigation and because defendant had merely speculated that the documents sought would ever be used in an investigation.
The judge drew an "analog[y]" between a UFR and
an accident report that a police officer fills out. While [the document] may ultimately at some point become part of a criminal investigation and even a civil lawsuit, it is not done as a criminal investigatory action initially.
....
Photos of an accident scene may be looked at as part of ... a criminal investigation. That doesn't mean they're criminal investigatory records.
The judge's "interpretation of a criminal investigatory record is a record created while a criminal investigation is going on[,]" or "the work product of ... the people investigating."
As to the internal nature of UFRs, Judge Brogan said:
I understand they certainly can be used internally but that does not, in my opinion, preclude it from being a public record obtainable under OPRA.
... I think if you have these reports and you don't let the people or ... the public at large to review them, you're just ... asking for a suspicious cloud when and if allegations are there was excessive force, an internal decision is not to prosecute.... [Y]ou're really encouraging a distrust of the police report which is ... the farthest thing we should be looking to do.
Finally, the judge found that the Township was "confusing" UFRs "with the allegations that [the force] may be excessive." He explained:
[T]he allegations are one thing, and they do sometimes damage a person's reputation unnecessarily, and there may be nothing of substance to support the allegations other than a disgruntled person who got arrested and ... possibly didn't heed the instructions of the police officer, got violent or potentially violent, posed a threat, and force had to be used.
However the Use of Force Report is a different issue. And ... I have a problem with the fact that somewhere it says... if they become discoverable and if they become obtainable, then it's going to essentially discourage police officers from being candid.
On appeal, defendant argues that the trial court erred in holding that the UFRs at issue "are not exempt from OPRA as `criminal investigatory records'" under N.J.S.A. 47:1A-1.1, because they are "not mandated by law to be made or to be maintained," and they "`pertain' to criminal investigations or related civil enforcement proceedings." Defendant also invokes common law right-of-access standards in arguing that the UFRs "are otherwise exempt from OPRA since the public interest in confidentiality outweighs the private right to access."
The trial court's determinations with respect to the applicability of OPRA are legal conclusions subject to de novo review. See MAG Entm't, LLC v. Division of Alcoholic Beverage Control, 375 N.J.Super. 534, 543, 868 A.2d 1067 (App. Div.2005); see also Manalapan Realty, L.P. v. Township Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
A New Jersey citizen's access to government records may be achieved in three distinct ways: through OPRA, which replaced the former Right-to-Know Law, N.J.S.A. 47:1A-1 to -4 (amended and supplemented *464 by OPRA, L. 2001, c. 404); via a common law right of access; and in discovery procedures in litigation. See MAG Entm't, supra, 375 N.J.Super. at 543, 868 A.2d 1067. "Records that are not available under one approach may be available through another." Ibid.
"The purpose of OPRA `is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Times of Trenton Publ'g Corp. v. Lafayette Yard Community Dev. Corp., 183 N.J. 519, 535, 874 A.2d 1064 (2005) (quoting Asbury Park Press v. Ocean County Prosecutor's Office, 374 N.J.Super. 312, 329, 864 A.2d 446 (Law Div.2004)). Thus, OPRA specifically directs that

government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access ... shall be construed in favor of the public's right of access; [and]

all government records shall be subject to public access unless exempt from such access by: [OPRA]; any other statute; resolution of either or both houses of the Legislature; regulation promulgated under the authority of any statute or Executive Order of the Governor; Executive Order of the Governor; Rules of Court; any federal law, federal regulation, or federal order[.]
[N.J.S.A. 47:1A-1 (emphasis added).]
OPRA also places on the custodian of the record "the burden of proving that the denial of access is authorized by law." N.J.S.A. 47:1A-6.
Consistent with its declarations, OPRA broadly defines a "government record" or "record" as
any paper, ... document, ... or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any such officer, ... or authority of the State ... or that has been received in the course of his or its official business by any such officer, ... or authority of the State.... The terms shall not include inter-agency or intra-agency advisory, consultative, or deliberative material.
[N.J.S.A. 47:1A-1.1 (emphasis added).]
However, N.J.S.A. 47:1A-1.1 also declares that "[a] government record shall not include" various categories of "information which [are] deemed to be confidential."[2] One such category is "criminal investigatory records," defined as "a record which is not required by law to be made, maintained or kept on file that is held by a law enforcement agency which pertains to any criminal investigation or related civil enforcement proceeding." N.J.S.A. 47:1A-1.1 (emphasis added).
"The first inquiry is whether the requested documents meet the statutory definition of government record and, if so, whether any exemption established in or recognized by any other law bars disclosure of the requested documents." Wilson v. Brown, 404 N.J.Super. 557, 571, 962 A.2d 1122 (App.Div.), certif. denied, 198 N.J. 473, 968 A.2d 1189 (2009).
Defendant must meet both prongs of the definition of "criminal investigatory reports" *465 for the documents to be inaccessible to plaintiff under N.J.S.A. 47:1A-1.1, that is, they must "not be required by law to be made," and they must "pertain[] to any criminal investigation or related civil enforcement proceeding." It is clear that the documents at issue do not meet either criterion.
Defendant, in asserting that the "not required by law to be made" standard must be strictly construed, invokes the authority of various published decisions decided under the Right-to-Know Law that preceded OPRA. However, that prior statute, N.J.S.A. 47:1A-2 (repealed by OPRA, L. 2001, c. 404, § 17), strictly defined government records as "all records which are required by law to be made, maintained or kept on file" by a public body. See Daily Journal v. Police Dep't of Vineland, 351 N.J.Super. 110, 121, 797 A.2d 186 (App.Div.), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002). That definition was clearly less encompassing than OPRA's scope of applicability under N.J.S.A. 47:1A-1.1. See O'Shea v. W. Milford Bd. of Educ., 391 N.J.Super. 534, 540 n. 3, 918 A.2d 735 (App.Div.), certif. denied, 192 N.J. 292, 927 A.2d 1291 (2007). Other authority relied upon by defendant, In re Request for Solid Waste Utility Customer Lists, 205 N.J.Super. 390, 392, 397, 501 A.2d 162 (App.Div.1985), aff'd as modified, 106 N.J. 508, 524 A.2d 386 (1987), is distinguishable on its facts. We are unaware of any reported cases decided under the Right-to-Know Law that involved UFRs or any similar document required to be prepared by the Attorney General's guidelines, directives or policies.
Defendant also relies on an April 14, 2005, decision of the Government Records Commission (GRC), entitled Serrano v. New Brunswick Police Dep't Custodian of Records (GRC Complaint No. 2004-15), in which the GRC determined that UFRs are criminal investigatory records and exempt from disclosure under OPRA. We reject this view, as Judge Brogan did in the trial court.
As a general proposition, we are "in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973). Although we have selectively deferred to the GRC's procedures, such as those for making and transmitting requests for access, see Renna v. County of Union, 407 N.J.Super. 230, 237 n. 2, 970 A.2d 414 (App.Div.2009); Paff v. City of E. Orange, 407 N.J.Super. 221, 228-29, 970 A.2d 409 (App.Div.2009), OPRA explicitly provides that "a decision of the [agency] shall not have value as a precedent for any case initiated in the Superior Court." N.J.S.A. 47:1A-7(e).
Manifestly, there are no specific "statutes" or "administrative rules" that require UFRs to be completed or maintained by the Township's police department. We hold, however, that the Attorney General's "Use of Force Policy", issued in 1985 and revised in 2000, that requires the completion of UFRs and their maintenance in the files of police departments, has the force of law for police entities. Under the Criminal Justice Act of 1970, N.J.S.A. 52:17B-97 to -117, the Attorney General (AG), as the "chief law enforcement officer of [this] State," see N.J.S.A. 52:17B-98, is charged with adopting guidelines, directives and policies that bind local police departments in the day-to-day administration of the law enforcement process. See In re Gen. Disciplinary Hearing of Carberry, 114 N.J. 574, 577-78, 556 A.2d 314 (1989), the articulated design is to promote the "uniform and efficient enforcement of the criminal law and the administration of criminal justice throughout the State." *466 N.J.S.A. 52:17B-98. Such provisions "shall be liberally construed." Ibid.
Accordingly, consistent with statutory authority, the AG issues guidelines, directives and policies concerning appropriate application of the State's criminal laws. See In re Carroll, 339 N.J.Super. 429, 439, 772 A.2d 45 (App.Div.), certif. denied, 170 N.J. 85, 784 A.2d 718 (2001). Indeed, our courts have "acknowledged the validity of various guidelines issued by the Attorney General," such as the plea offer guidelines, the sex offender registration guidelines, the drug screening guidelines, and the guidelines assisting prosecutors in rendering uniform decisions concerning drug testing. Ibid.; see also, e.g., State v. Henderson, 397 N.J.Super. 398, 411, 937 A.2d 988 (App.Div.2008)(addressing AG guidelines regarding eyewitness identification).
AG guidelines, directives and policies of this type are not "administrative rules" as defined in N.J.S.A. 52:14B-2(e), and, thus, do not require formal promulgation under the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -15. See Doe v. Poritz, 142 N.J. 1, 98, 662 A.2d 367 (1995). Those guidelines, directives or policies cannot be ignored, however: they are binding and enforceable on local law enforcement agencies, see Carroll, supra, 339 N.J.Super. at 442-43, 772 A.2d 45; and, at a minimum, they are "`statements concerning the internal management or discipline of an[] agency.'" Id. at 442, 772 A.2d 45.
Furthermore, the AG's Use of Force Policy is clear in respect of the reasons for and use of UFRs. It states that "[i]n all instances" when any force is used, each officer "shall complete" both "[a]ny reports made necessary by the nature of the underlying incident and a Use of Force Report[.]" The word "shall" is generally considered to connote mandatoriness. See State v. Thomas, 188 N.J. 137, 150, 902 A.2d 1185 (2006); Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325, 744 A.2d 175 (2000). Therefore, we conclude that the AG's Use of Force Policy requires completion and retention of a standardized document whenever an officer has used force in the discharge of police duties.
Additionally, various parts of the AG's Use of Force Policy are expressly incorporated in the AG's Internal Affairs Policy & Procedures[3] (IA Guidelines), which defendant acknowledges as binding pursuant to N.J.S.A. 40A:14-181. The introduction to the IA Guidelines declares it to be "critical in nature and must be implemented by every law enforcement agency" that "[t]he agency must notify the county prosecutor immediately of any use of force by an officer that results in death or serious bodily injury." IA Guidelines, at 11-5. The IA Guidelines further mandate that any local law enforcement agency's rules and regulations "should state that any use of force by an officer must comply with State and federal law, the Attorney General's and the county prosecutor's policies, and the agency's [standard operating procedures]." Id. at 11-9. One of the specific duties of an internal affairs unit is to be "responsible for the coordination of administrative investigations involving ... use of force incidents." Id. at 11-14.
Although we have held that AG guidelines might not impose mandatory requirements in particular circumstances, see McElwee v. Borough of Fieldsboro, 400 N.J.Super. 388, 947 A.2d 681 (App.Div. 2008), the quality, character and underlying policies of those bearing upon UFRs lead us to reach a conclusion that they are mandatory for all law enforcement agencies subject to the AG's supervision. *467 There can be no question that they have the force of law in respect of the duties of law enforcement agencies to conform to the requirements regarding the use of force and accountability for it.
We reject defendant's argument that the documentation requirements of the AG's Use of Force Policy should simply be taken as treating UFRs as internal reports submitted to the AG that are not subject to OPRA. UFRs do not share the same qualities as uniform crime report forms and other documents that are considered "confidential by the Division of State Police and are not public records." N.J.A.C. 13:57-1.3(d). From public interest perspectives, UFRs are manifestly in another category.
We are mindful of regulations expressly requiring the completion of similar reports that deem those reports "confidential" and not subject to OPRA. For example, pursuant to its regulatory powers in N.J.S.A. 52:17B-170(e)(22), the Juvenile Justice Commission in the Department of Law and Public Safety has promulgated use-of-force policies for its juvenile parole officers, N.J.A.C. 13:96-3.1 to -11, and for its investigators, N.J.A.C. 13:97-2.1 to -11, that are similar to the AG's Use of Force Policy. Those regulations expressly state that any officer regulated "shall complete a ... Use of Force Report when he or she participated in, or witnessed, [any use of force]," N.J.A.C. 13:96-3.6 and 13:97-2.6, but then deem such reports "confidential" and not subject to OPRA. N.J.A.C. 13:96-1.4 and 13:97-1.4. Those regulations are not before us in this matter.
The UFRs with which we deal here are nominally subject to OPRA, and there is no governing policy or statement containing specific provisions for exempting them from OPRA's general rule of disclosure. We are, in this matter, guided by the concept that administrative actions, including those stated in or imported to duly promulgated rules and regulations, cannot override a legislative enactment such as OPRA. Absent specific legislative leave, no agency is authorized to deviate from expressed or implied legislative policies. See George Harms Constr. Co. v. New Jersey Tpke. Auth., 137 N.J. 8, 27, 644 A.2d 76 (1994).
Without a particularized inclusionary provision in the AG's IA Guidelines, we decline to regard UFRs as internal affairs documents. The section of the AG's IA Guidelines titled "Confidentiality" declares that "[t]he nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are confidential information" and "shall only be released under ... limited circumstances." IA Guidelines, at 11-46. These terms do not clearly encompass UFRs.
Although we have fully resolved the OPRA issue with the foregoing determination that the Attorney General's requirements regarding UFRs sufficiently bind local police departments to satisfy OPRA's "required by law" standard, it is appropriate to note that we also reject the other OPRA-based argument offered by defendant in this appeal. In the absence of a factual showing that any of the reports sought in this matter pertained to an actual criminal investigation or to an existing related civil enforcement proceeding, we decline to adopt the position urged by defendant that UFRs should, generically, be regarded to be shielded from public access as records of that type. Section III(A) of the AG's Use of Force Policy requires the completion and filing of a UFR "in all instances" involving the use of force, not just those instances involving an arrest. Thus, there is no basis to consider all such reports, generically, to pertain to criminal investigations. We share Judge Brogan's sense that it cannot be *468 assumed that a UFR might become part of a criminal investigation.
We also do not regard the possible, speculative use of a UFR in an internal affairs investigation to provide the necessary basis for precluding access under OPRA. We note, again, that the Attorney General's IA Guidelines require the preparation and filing of UFRs. It is of no small moment, also, that Judge Brogan rejected the motion for reconsideration, supported by a certification from the Township's Police Chief, that raised the internal affairs investigation issue, because the motion with its supporting papers did not satisfy the standard for reconsideration motions. See Morey v. Borough of Wildwood Crest, 18 N.J.Tax 335, 339 (App. Div.1999), certif. denied, 163 N.J. 80, 747 A.2d 287 (2000).
Defendant Township also invokes the standards governing the common law right of access to public records, contending that, even if plaintiff has a right of access to UFRs under OPRA, Judge Brogan erred by not also balancing plaintiff's private interest in gaining access to those documents against the Township's public interest in confidentiality. Defendant argues that we should conduct our own balancing test and deny plaintiff's request for access to the documents, since the public interest in maintaining confidentiality of UFRs is greater than any private reasons for disclosure. We reject this argument, as well.
OPRA, itself, expressly provides no limit to "the common law right of access to a government record, including criminal investigatory records of a law enforcement agency." N.J.S.A. 47:1A-8. Indeed, historically, "[t]he common law makes a much broader class of documents available than [OPRA], but on a qualified basis." Daily Journal, supra, 351 N.J.Super. at 122, 797 A.2d 186. Accord Bergen County Improv. Auth. v. North Jersey Media Group, Inc., 370 N.J.Super. 504, 509-10, 851 A.2d 731 (App.Div.), certif. denied, 182 N.J. 143, 861 A.2d 847 (2004). Under the common law, public records available for inspection "include any records made by public officers in the exercise of their functions. As such, they include almost every document recorded, generated, or produced by public officials, whether or not required by law to be made, maintained, or kept on file." Daily Journal, supra, 351 N.J.Super. at 122, 797 A.2d 186 (citations omitted).
However, to gain access to this broader class of records under the common law, a requestor is governed by a two-prong test: that person "must `establish an interest in the subject matter of the material;'" and, the requestor's right to access "`must be balanced against the State's interest in preventing disclosure.'" Mason v. City of Hoboken, 196 N.J. 51, 67-68, 951 A.2d 1017 (2008) (quoting Keddie v. Rutgers, 148 N.J. 36, 50, 689 A.2d 702 (1997)). The Supreme Court has established that the court engaging in the required balancing test may consider:
(1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by *469 the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.
[Loigman v. Kimmelman, 102 N.J. 98, 113, 505 A.2d 958 (1986).]
Because Judge Brogan found that plaintiff was entitled to access to the Township's UFRs under OPRA, he did not err by omitting to consider the test for access to the reports under the common law. The requestor does not have to meet both OPRA and the common law right to access. Documents that are not available under one approach may be accessed by another. If disclosure is allowed under OPRA, the court should not reach the issue regarding the common law right. See Asbury Park Press v. County of Monmouth, 406 N.J.Super. 1, 4, 966 A.2d 75 (App.Div.2009). Moreover, the public might be able to obtain documents under common law tests that it could not obtain through OPRA. See Bergen County Improvement Auth., supra, 370 N.J.Super. at 510, 851 A.2d 731.
We, therefore, reject defendant's arguments that the trial court should have balanced the interests and that we should do so on appeal. The balancing test for access under the common law requires factual determinations that are best left to the trial courts. Without appropriate proofs, we have no basis for evaluating defendant's claims that its interest in maintaining confidentiality clearly outweighs plaintiff's interest in access, and that disclosure of the documents "will have a potential chilling effect upon the candidness with which officers complete the Reports."
Finally, we also reject plaintiff's argument on appeal that a remand of this matter for resolution of the reserved attorney's fees issues should be assigned to another judge. We discern nothing in the record, in general or specifically in Judge Brogan's ruminations regarding attorney's fee applications in matters such as this, that suggests any inability on his part to give the issue full and fair consideration under prevailing legal standards. In the remand, the trial court shall also determine the issue of attorney's fees for services in this appeal. See R. 2:11-4 (last paragraph).
We affirm regarding the access entitlement issues under OPRA; we remand for resolution of the issues regarding costs and attorney's fee awards both in the trial court proceedings and on appeal.
NOTES
[1] This was a representation by counsel for defendant Township on the record during argument of the initial motion.
[2] For example, in addition to deliberative, consultative or advisory intra- or inter-agency materials, which are not included in the terms "government record" or "record," N.J.S.A. 47:1A-1.1, "the personnel ... records of any individual in the possession of a public agency" are "not ... considered a government record and shall not be made available for public access." N.J.S.A. 47:1A-10.
[3] www.state.nj.us/lps/dcj/agguide/internalaffairs2000v1_2.pdf