NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3643-23

STEVEN WRONKO,

      Plaintiff-Appellant,

v.

MONMOUTH COUNTY SOCIETY
FOR THE PREVENTION OF
CRUELTY TO ANIMALS, a
domestic New Jersey non-profit
corporation, and the RECORDS
CUSTODIAN OF THE MONMOUTH
COUNTY SOCIETY FOR THE
PREVENTION OF CRUELTY TO
ANIMALS,[1]

      Defendants-Respondents.

> **APPROVED FOR PUBLICATION**
>
> **January 9, 2026**
>
> APPELLATE DIVISION

Argued December 4, 2025 – Decided January 9, 2026

Before Judges Marczyk, Bishop-Thompson, and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0696-23.

Christina N. Stripp argued the cause for appellant (Cohn Lifland Pearlman Herrmann & Knopf LLP,

---

[1]  Improperly pled as Society for the Prevention of Cruelty of Animals.

attorneys; Walter M. Luers and Christina N. Stripp, on the briefs).

John F. Byrnes argued the cause for respondents (Byrnes O'Hern & Heugle, LLC, attorneys; John F. Byrnes and Sean F. Byrnes, on the brief).

The opinion of the court was delivered by

MARCZYK, J.A.D.

Plaintiff Steven Wronko appeals from the trial court's June 27, 2024 order finding defendant Monmouth County Society for the Prevention of Cruelty to Animals (MCSPCA) is not a public agency under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13.

The question before us is whether the MCSPCA—a non-profit organization that provides humane law enforcement services for the Monmouth County Prosecutor's Office (MCPO) under a Memorandum of Understanding (MOU)—is a public agency required to disclose public records under OPRA. We conclude the MCSPCA is not a public agency subject to the requirements of OPRA because the MCPO is not a political subdivision under N.J.S.A. 47:1A-1.1, but rather is an office. Therefore, the MCSPCA is an instrumentality of an office, analogous to the volunteer fire company in Verry v. Franklin Fire District No. 1, 230 N.J. 285, 301 (2017), which our Supreme Court held did not fall within OPRA's definition of a public agency. Accordingly, we affirm the trial court's order.

2                                                                                    A-3643-23

I.

A.

In 2018, the Legislature modified the statutory scheme governing the enforcement of animal cruelty crimes. L. 2017, c. 331. Before the amendments, the New Jersey Society for the Prevention of Cruelty to Animals (NJSPCA) served as "a parent corporation for the purposes of coordinating the functions of county societies for the prevention of cruelty to animals [(SPCA)], and of promoting the interests of, protecting and caring for, and doing any and all things to benefit or that tend to benefit animals." N.J.S.A. 4:22-11.2(a)(1) (2006). The NJSPCA was required to "prepare an annual report" detailing the "law enforcement activity of the [NJSPCA] and the county societies," N.J.S.A. 4:22-11.2(b) (2006), and submit statistical data to the Attorney General's office every quarter, N.J.S.A. 4:22-11.2(c) (2006). The previous statutory scheme contained procedures for the appointment and maintenance of a "board of trustees consisting of [fifteen] persons, of whom [twelve] shall be members of the society elected by the membership thereof and three shall be persons appointed by the Governor with the advice and consent of the Senate." N.J.S.A. 4:22-11.2(a)(1) (2006).

In 2018, the Legislature's various enactments, amendments, and repeals under L. 2017, c. 331, §§ 27-35 removed the NJSPCA from its role as a

"parent corporation" of county societies and transferred humane law enforcement functions to county prosecutors. For instance, L. 2017, c. 331, § 28(a)(1) directed "[e]ach county prosecutor" to designate a county-wide animal cruelty prosecutor. It also authorized the county prosecutors to "enter into a[n MOU] with the county [SPCA]" and permitted those county societies to assist with "enforcement of [A]rticle 2 of [C]hapter 22 of Title 4 . . . , and to designate humane law enforcement officers [(HLEOs)] . . . to assist with investigations, arrest violators, and otherwise act as an officer for detection, apprehension, and arrest of offenders." L. 2017, c. 331, § 28(a)(2)(b) (codified at N.J.S.A. 4:22-14.4(a)(2)(b)). L. 2017, c. 331, § 27 (codified at N.J.S.A. 4:22-14.3) specified any existing HLEO, under either a county society or the NJSPCA, "shall be eligible for designation as a" HLEO for either a municipality or a county society. Under L. 2017, c. 331, § 29(c) (codified as N.J.S.A. 4:22-14.5(c)), "[a] county prosecutor may authorize a [HLEO] to possess, carry, and use a firearm . . . ." Notably, county prosecutors are responsible to supervise all humane law enforcement activities under the Act. L. 2017, c. 331, § 28(a)(2)(b) (codified as N.J.S.A. 4:22-14.4(a)(2)(b)).

The county societies in existence at the time of the enactment were permitted to elect whether to participate in the new scheme and "be designated as the county [SPCA]." L. 2017, c. 331, § 32 (codified as N.J.S.A. 4:22-14.8).

When a county society elects to be designated as the county animal society, it "shall be responsible for efficiently providing or locating humane shelter and care for any animals at the request of the county prosecutor, the county sheriff, or a municipal [HLEO]." Ibid. The legislation also specified fines and penalties collected in the course of the HLEO's duties would be proportionally paid to counties and municipalities as opposed to being paid to the county SPCA or NJSPCA. L. 2017, c. 331, § 22 (codified as N.J.S.A. 4:22-55).

The Senate Budget and Appropriations Committee released a statement explaining the enactment abolished "[t]he charter system applicable to county societies under current law" and replaced it with a new scheme under which each county prosecutor must appoint a chief humane law enforcement officer (CHLEO) to oversee animal cruelty enforcement at the county level. S. Budget & Appropriations Comm. Statement to S. 3558, at 1-2 (Dec. 14, 2017). It required each municipality "to designate at least one municipal [HLEO]" and allowed a HLEO to hold appointments to that position in multiple municipalities within the county. Id. at 2. The statement also explained the enactment allowed for the automatic conversion of existing county societies chartered by the NJSPCA into the "county society designated by the county prosecutor" and included measures for establishing an independent county society in counties where one was not already established. Id. at 1-2.

A-3643-23

B.

After the enactment of the 2018 legislation, the MCPO and the MCSPCA entered into an MOU. The agreement: established the MCSPCA as the county SPCA and required it, in coordination with the county prosecutor and county sheriff, to "coordinate shelter and care for animals"; authorized the MCSPCA to "assist with [the] enforcement of Title 4, Chapter 22, Article 2 of the New Jersey Statutes"; authorized the county prosecutor to designate MCSPCA members as HLEOs; and provided it was "the exclusive mechanism by which non-sworn law enforcement personnel may exercise law enforcement powers pursuant to Title 4, Chapter 22, Article 2, within the County of Monmouth."

Section I of the MOU details the MCSPCA's rights under the agreement and specifies its provisions "shall apply only to the exercise of law enforcement functions by the MCSPCA and its members in Monmouth County . . . [and] shall not affect, alter, or in any way impair any other activities of the MCSPCA (fundraising, adoptions, veterinary services, etc.)." Section I goes on to state "[t]he MCSPCA is not a department, office, or agency of the County of Monmouth." It also notes the MCPO's only connection to the MCSPCA is the "granting of and the supervisory authority over the MCSPCA's exercise of Title 4 law enforcement powers as set forth in this directive."

6                                                                                    A-3643-23

The MOU requires an applicant for the HLEO position must be a member of the MCSPCA and provides it "is solely within the discretion of the MCPO" to decide whether to approve or deny a member's application. Section XI of the agreement restricts the CHLEO's and HLEOs' ability to directly communicate with the press, requiring they coordinate with the MCPO's public information officer. The remaining relevant provisions of the MOU concern: training of the CHLEO and HLEOs; uniforms and vehicles; the ability for the CHLEO and HLEOs to carry a firearm; reporting requirements; and agreements related to investigation, evidence retention, and other law enforcement functions.

## C.

On April 14, 2023, the MCSPCA's executive director executed a certification related to the underlying litigation. He stated the MCSPCA is a "501([c])(3) tax-exempt charitable organization" with a mission to "protect, care[,] and advocate for all animals." The executive director certified that the MCSPCA receives its funding from donations, adoption proceeds, and proceeds from the veterinary office. He explained, since the adoption of L. 2017, c. 331 in 2018, the MCSPCA "no longer receives the proceeds from" citations resulting in "animal cruelty convictions" and noted the MCSPCA was

7                                                                              A-3643-23

authorized to "exercise law enforcement functions" under the MOU with the MCPO.

## D.

On January 19, 2023, plaintiff emailed the MCSPCA "a public records request under [OPRA] and [the] common law." He sought "all contracts that are active and current as of January 19, 2023" and "the latest payroll records for all [MCSPCA] employees." On January 20, counsel for the MCSPCA replied, informing plaintiff the MCSPCA was "no longer considered a 'public agency'" after the 2018 legislative amendments and therefore not obligated to provide the requested records.

On March 6, 2023, plaintiff filed an action seeking the disclosure of the requested documents under OPRA. He argued the MCSPCA is a public agency subject to OPRA because it engages in "law enforcement" activities. The MCSPCA answered, asserting the fact that animal cruelty conviction fines and penalties were now remitted to the County—not the MCSPCA—demonstrates it is no longer a public agency.

Following oral argument,[2] the trial court determined the MCSPCA was a public agency subject to OPRA and set a supplemental briefing schedule to

---

[2] The judge originally assigned to the case died prior to issuing a decision, and the matter was subsequently reassigned to a new judge.

determine whether any privileges applied to the documents plaintiff requested. It also ordered the MCSPCA to produce the contested records for an in camera review. The MCSPCA moved for reconsideration, and the court agreed to stay the previous order pending adjudication of the motion.

On June 27, 2024, the trial court rendered an oral decision on the MCSPCA's motion. It found there was a proper basis for reconsideration in light of our Supreme Court's ruling in American Civil Liberties Union of New Jersey v. County Prosecutors Association of New Jersey, 257 N.J. 87 (2024), which had been issued after its initial ruling. The trial court ultimately found the MCSPCA was not a "public agency," concluding it instead was "an instrumentality of an instrumentality and, therefore, it does not fall within the scope of OPRA."

## II.

Plaintiff contends the MCSPCA is a public agency within the meaning of OPRA because it employs law enforcement officers and enforces animal cruelty laws. He asserts the trial court erred in granting reconsideration and finding the MCSPCA was not subject to OPRA.

A "trial court's determinations with respect to the applicability of OPRA are legal conclusions subject to de novo review." K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 349 (App. Div. 2011) (quoting O'Shea v. Twp.

of W. Milford, 410 N.J. Super. 371, 379 (App. Div. 2009)); accord MAG Ent., LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 543 (App. Div. 2005). We exercise plenary review regarding a trial court's interpretation of OPRA and its exclusions. Cnty. Prosecutors Ass'n of N.J., 257 N.J. at 101.

"OPRA is designed to give members of the public 'ready access to government records' unless the statute exempts them from disclosure." Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 140-41 (2022) (quoting Burnett v. Cnty. of Bergen, 198 N.J. 408, 421 (2009)). The purpose of OPRA is "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." O'Boyle v. Borough of Longport, 218 N.J. 168, 184 (2014) (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)); see also Rivera, 250 N.J. at 141 (stating OPRA's "core concern is to promote transparency in government"). However, although the public's right to disclosure is broad, it is "not unlimited." Bozzi v. City of Jersey City, 248 N.J. 274, 284 (2021).

Plaintiff argues the MCSPCA is a public agency under OPRA because it exercises law enforcement powers, and its law enforcement officers operate under the supervision of the MCPO. In support of his contention, he points to the MCSPCA's, CHLEO's, and HLEOs' use of firearms, authority to conduct criminal investigations, and arrest powers. Plaintiff asserts the MCSPCA "also

10

acts as the [HLEO] for many [other] municipalities" in Monmouth County. He further contends the MCSPCA is not an instrumentality of the MCPO but rather a direct creation of the Legislature, averring its powers come directly from statutory authority under N.J.S.A. 4:22-14.4(a)(2)(b).

OPRA is only implicated if the entity served with a document request meets the definition of a "public agency" under N.J.S.A. 47:1A-1, -6. Cnty. Prosecutors Ass'n of N.J., 257 N.J. at 102. The issue before us is whether the MCSPCA is a public agency under OPRA, which requires we first address whether the MCPO is a political subdivision pursuant to N.J.S.A. 47:1A-1. OPRA defines a "[p]ublic agency" or "agency" as:

> any of the principal departments in the Executive Branch of State Government, and any division, board, bureau, office, commission[,] or other instrumentality within or created by such department; the Legislature of the State and any office, board, bureau[,] or commission within or created by the Legislative Branch; and any independent State authority, commission, instrumentality[,] or agency. The terms also mean any political subdivision of the State or combination of political subdivisions, and any division, board, bureau, office, commission[,] or other instrumentality within or created by a political subdivision of the State or combination of political subdivisions, and any independent authority, commission, instrumentality[,] or agency created by a political subdivision or combination of political subdivisions.
>
> [N.J.S.A. 47:1A-1.1.]

In County Prosecutors, our Supreme Court addressed whether "the County Prosecutors Association of New Jersey (CPANJ), a nonprofit organization" was a public agency pursuant to OPRA. 257 N.J. at 93. It also considered whether a county prosecutor "constitutes a 'political subdivision' for purposes of OPRA." Id. at 106.

The ACLU argued the CPANJ was a public entity based on a 1985 joint policy statement with the Attorney General's office "regarding prosecutorial review of search warrant applications" as well as its participation "in a 2018 initiative to stop violence against women." Id. at 94. According to the ACLU, the CPANJ was acting as a "partner in implementing statewide criminal justice policy." Ibid. It further noted the CPANJ, by statute, was entitled to have a representative on both the Department of Law and Public Safety's Police Training Commission and the Parole Advisory Board, and it highlighted the CPANJ "regularly sends copies of its meeting minutes and agendas to the Office of the Attorney General." Id. at 94-95 (internal quotation marks omitted).

The ACLU also alleged the prosecutors themselves were utilizing the CPANJ to affect state policy, using its resources to coordinate agendas and meetings, as well as participate in litigation as amicus curiae. Id. at 95. The ACLU requested records from the CPANJ's meetings, funding details, briefs

A-3643-23

filed in federal and state courts by the CPANJ, and policies or practices generated by the CPANJ and sent to county prosecutors. Ibid. It "urge[d the Court] to find that [the] CPANJ [wa]s an instrumentality of the county prosecutors, 'state actors' who together comprise a 'combination of political subdivisions' under N.J.S.A. 47:1A-1.1." Id. at 106.

The Supreme Court observed, "OPRA applies only if the entity to which a request is directed meets the statutory definition of a public agency." Id. at 102. It proceeded to discuss its prior decision in Verry. Id. at 105-07. In Verry, the plaintiff filed records requests regarding two fire departments in Franklin: Franklin Fire District No. 1 (FFD1) and the Millstone Valley Fire Department (MVFD). 230 N.J. at 288. FFD1 was part of the municipality's professional fire-fighting force, and MVFD was a volunteer department under the supervision of FFD1. Id. at 287-89. The plaintiff sought records including the MVFD's constitution and bylaws. Id. at 289. The County Prosecutors Court made the following observations regarding Verry:

> We found in Verry that [FFD1] constituted a public agency under N.J.S.A. 47:1A-1.1 because it was the "creation of a municipality," which in turn was "undoubtedly a political subdivision" that had exercised statutory authority to form the [FFD1]. Id. at 298-99. We therefore deemed the [FFD1] to be "an instrumentality of a political subdivision," thus satisfying "the definition of public agency under the second sentence of OPRA's definition." Id. at 299 (citing N.J.S.A. 47:1A-1.1).

13

We reached the opposite conclusion with respect to the [MVFD], however. Id. at 299-302. Noting that N.J.S.A. 40A:14-70.1 authorizes a fire district to create or contract with volunteer fire companies, we concluded that "a volunteer squad may be regarded as an instrumentality of a fire district." Id. at 300-01. We observed that

> because the [FFD1] itself is not a political subdivision, but rather the instrumentality of one, the volunteer company is only the instrumentality of an instrumentality. Although OPRA provides that an instrumentality of a political subdivision constitutes a public agency, it does not provide that an instrumentality of an instrumentality constitutes a public agency. OPRA requires a direct connection to a political subdivision.
>
> [Id. at 301 (citing N.J.S.A. 47:1A-1.1).]

[257 N.J. at 105.]

The Court concluded a county prosecutor is not "a 'political subdivision' under N.J.S.A. 47:1A-1.1's plain language" and the CPANJ was not a public agency "within the meaning of N.J.S.A. 47:1A-1.1." Id. at 108-09.

The Court did not specifically address how county prosecutor's offices should be classified under N.J.S.A. 47:1A-1.1. Therefore, we look to our decision in County Prosecutors for guidance, in which we noted:

> [T]he offices of the county prosecutors are better characterized as "office[s] . . . created by the Legislative Branch," N.J.S.A. 47:1A-1.1, for while a county prosecutor is a constitutional officer, "the task

14

of defini[ng]" their "powers, rights, duties and responsibilities" was "left to the Legislature." Morss v. Forbes, 24 N.J. 341, 369 (1957); see also N.J.S.A. 2A:158-1 (providing for the appointment of county prosecutors and assigning them "all of the powers and . . . all of the duties formerly had and performed by the prosecutor[s] of the pleas of such count[ies]").

[Am. Civ. Liberties Union of N.J. v. Cnty. Prosecutors Ass'n of N.J., 474 N.J. Super. 243, 263 (App. Div. 2022) (all but first alteration in original) (citations reformatted).]

We further stated:

[Entities such as the CPANJ do] not constitute a public agency, because an "instrumentality" only qualifies as a "public agency" if it is "within or created by" a "principal department[ ] in the Executive Branch," "the Legislative Branch," or "a political subdivision . . . or combination of political subdivisions," or if it is an "independent State . . . instrumentality." N.J.S.A. 47:1A-1.1. OPRA "does not provide that an instrumentality of an instrumentality constitutes a public agency," Verry, 230 N.J. at 301, or that an instrumentality of offices constitutes a public agency, N.J.S.A. 47:1A-1.1.

[Id. at 263-64 (second alteration in original).]

Consistent with our holding in County Prosecutors, we conclude the MCPO is an office created by the Legislature. We further determine the MCSPCA was not created by a political subdivision and derives its authority to perform law enforcement functions solely from the MCPO through an MOU

15

pursuant to N.J.S.A. 4:22-14.4(a)(2)(b).[3] The MCPO had the discretion to appoint the MCSPCA but was not required to do so and, alternatively, could have "designate[d] . . . a county law enforcement officer to serve as the [CHLEO]" and enforce the provisions of "[A]rticle 2 of [C]hapter 22 of Title 4." See N.J.S.A. 4:22-14.4(a)(2)(a), (b).

Although the MCPO is responsible for supervising the MCSPCA's law enforcement functions, see N.J.S.A. 4:22-14.4(a)(2)(b), this delegation of authority does not transform the MCSPCA into a public agency for the purpose of N.J.S.A. 47:1A-1.1. Because the MCSPCA's relationship to any political subdivision is indirect, the MCSPCA is, at most, an instrumentality of an office and, therefore, not a public agency under N.J.S.A. 47:1A-1.1. Accordingly, the court did not err in denying plaintiff's request for records given it determined the MCSPCA was not a public agency.

We are mindful the MCSPCA's law enforcement responsibilities are regarded as traditional government functions. However, that is not dispositive of whether the MCSPCA is a public agency subject to OPRA under our jurisprudence, as volunteer fire companies "performing fire duty" are also

___

[3] The MCPO designated the MCSPCA to enforce animal cruelty laws under N.J.S.A. 4:22-14.4(a)(2)(b) in much the same way as the FFD1 contracted with the MVFD in Verry, pursuant to N.J.S.A. 40A:14-70.1. See 230 N.J. at 300-01. Thus, we are unpersuaded by plaintiff's argument the MCSPCA is a direct creation of the Legislature.

"deemed to be exercising a governmental function" but have nevertheless been held to not be public agencies under OPRA. See Verry, 230 N.J. at 300, 302; N.J.S.A. 40A:14-70.1(b). The Verry Court observed:

> To the extent our prior decisions have discussed "creation" or "governmental-function" tests when demarcating the boundaries of what qualifies as a public agency, see, e.g., Fair Share Hous. Ctr., Inc. v. N.J. State League of Muns., 207 N.J. 489, 507 (2011), such tests are useful only insomuch as they effectuate application of the statutory language. Because the [FFD1] is an instrumentality of a political subdivision, it falls within the plain language of the statutory definition of public agency. By contrast, the MVFD is a non-profit association and, while it is supervised by the [FFD1], the volunteer company is not a public agency as defined by OPRA.
>
> [230 N.J. at 302 (citation reformatted).]

The MCSPCA is analogous to the fire company in Verry. It was not created by a political subdivision but was authorized to perform a government function by an office. Thus, the government-function test does not control when the entity at issue—like the MCSPCA—is not itself considered a public agency under N.J.S.A. 47:1A-1.1. Likewise, the Court's decision in County Prosecutors indicates the definition of a public agency depends less on the subject organization's function and more on its relationship to an established political subdivision or instrumentality. See 257 N.J. at 108.

17

Lastly, plaintiff here, as the plaintiff in <u>Verry</u>, is not without recourse. Law enforcement-related documents may be requested through the MCPO, based on its supervisory authority over the MCSPCA, as set forth in N.J.S.A. 4:22-14.4(a)(2)(b) and the MOU.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

18                                                  A-3643-23