The opinion of the court was delivered by CURRIER, J.A.D.
*75 In this Open Public Records Act (OPRA)[1] litigation, defendant, the New Jersey Society for the Prevention of Cruelty to Animals (NJSPCA), argues that it should be exempt from complying with OPRA requests because it does not receive public funds and, *76 staffed only with volunteers, it lacks the monies and personnel to facilitate the requests. Because the NJSPCA is a public agency that receives public funds and performs a traditional government function, we conclude that it is *323 subject to OPRA, and must comply with requests made under the Act. It is the province of the Legislature to exempt the agency from OPRA's mandate. For these reasons, we affirm the orders compelling NJSPCA to comply with the Act and awarding plaintiff counsel fees.
The NJSPCA is "a parent corporation for the purposes of coordinating the functions of county societies for the prevention of cruelty to animals, and of promoting the interests of, protecting and caring for, and doing any and all things to benefit or that tend to benefit animals." N.J.S.A. 4:22-11.2(a)(1). It is governed by a Board of Trustees that appoints humane law enforcement officers to serve as authorized agents of the organization or of an NJSPCA county society for the prevention of cruelty to animals. See N.J.S.A. 4:22-11.1.
The NJSPCA is required to prepare and submit an annual report concerning its law enforcement activity, which shall be made public upon request to the State Attorney General and Legislature. N.J.S.A. 4:22-11.2(b). The NJSPCA is also required to "submit quarterly to the Attorney General statistical information concerning its law enforcement activity during that period." N.J.S.A. 4:22-11.2(c).
After the NJSPCA took over an animal shelter in a receivership, plaintiff Collene Wronko sent an OPRA request to the organization requesting information concerning the agency and the shelter. When there was no response, plaintiff filed a verified complaint and Order to Show Cause (OTSC), seeking a declaration that the NJSPCA was a public agency subject to OPRA and declaring the NJSPCA's inaction in response to plaintiff's records request to be an unlawful violation of OPRA. Plaintiff also sought a release of the requested records, preservation of the requested records pending resolution of the matter, and attorney's fees and *77 costs. The NJSPCA opposed the OTSC, asserting that it was not a public agency.[2]
During oral argument on the OTSC, however, the NJSPCA conceded that it was a public agency. The trial judge determined that because of its status as a public agency, the NJSPCA was subject to OPRA and had to develop a mechanism for responding to OPRA requests. The agency was given six weeks to develop and adopt an acceptable response procedure. During that period, the NJSPCA submitted a proposal that it would charge an hourly labor rate for compiling and producing documents; the charge would be determined on a case-by-case basis depending on the volume of documents requested and complexity of the request. Plaintiff objected to any charges and the parties returned to court. Plaintiff requested that the judge rule on her OTSC or permit limited discovery to explore the agency's contention that it could not respond to OPRA requests without imposing a fee due to its lack of paid staff and limited administrative capabilities.
*324 Following a second oral argument, the judge directed that NJSPCA provide a certification from its Chief Financial Officer detailing the agency's financial situation in order to determine whether NJSPCA could charge a fee for the records request. In response, the NJSPCA submitted a certification of its Chief Humane Law Enforcement Officer and Treasurer, Frank Rizzo.
*78 Rizzo certified the NJSPCA's funding comes "from donations, grants, bequests, the sharing of municipal fines, and not [from] public taxes like other government agencies." The agency conducts fundraisers to fund its law enforcement activities in support of its mission, and accepts donations on its website. Rizzo stated that the organization currently had an annual budget of $323,000, funded from donations of $110,000, and $77,000 collected from municipal fines.
In an August 28, 2015 written decision, the judge considered the NJSPCA's structure as a non-profit organization with a volunteer staff and no full-time employees or a records custodian. He noted that the NJSPCA's board of trustees was not paid, the NJSPCA's president received $6000 annually, and the majority of the NJSPCA's revenue came from private donations. The judge determined, however, that the NJSPCA could not assess a special service charge. He observed that plaintiff's specific records request was not burdensome and did not "amount to an 'extraordinary' expense of time." He opined that a response to the particular demands was not "labor intensive," and much of the additional information plaintiff sought could be found in the NJSPCA's tax returns and in its reports or summary of statistics.
Finding that plaintiff's records request was not "beyond the scope of an ordinary demand" even though the NJSPCA had minimal personnel and would have to make specific arrangements to service the request, the judge granted plaintiff's application and awarded attorney's fees and costs to plaintiff as the prevailing party.[3] Defendant's subsequent motion for reconsideration was denied in a written decision and order on November 20, 2015.
In an application for counsel fees, plaintiff sought $42,147.50 for the billed work as well as a "contingency enhancement of [forty percent]" and costs of $1327.82. In a January 26, 2016 order and written decision, the judge held that plaintiff was entitled to attorney's fees as the prevailing party, and found the number of *79 hours expended and the billing rates reasonable. The judge declined to grant an enhancement because he did not find that plaintiff's claims were "exceptional" as contemplated by Rendine v. Pantzer, 141 N.J. 292, 341, 661 A.2d 1202 (1995). Since "[t]he purpose of applying an enhancement to a lodestar fee is to acknowledge the risk of non-payment in contingency fee actions" and plaintiff was being reimbursed for all of its work, the judge reasoned that the "underlying policy reasons for granting a fee enhancement would not be advanced ... in the instant matter."
The NJSPCA appeals from the order requiring it to comply with plaintiff's OPRA requests, the order denying it reconsideration, and the order awarding attorney's fees and costs. Our review is de novo. Paff v. N.J. State Firemen's Ass'n, 431 N.J. Super. 278, 286, 69 A.3d 118 (App. Div. 2013). A trial court's "determinations with respect to the applicability of OPRA are legal conclusions subject to de novo review." O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 379, 982 A.2d 459 (App. Div. 2009).
*325 Before this court, the NJSPCA argues that it is not a public agency subject to OPRA as it does not fit within the legislative intent of the statute. Without public funding, the organization contends that it cannot fall within the ambit of OPRA. As "a creature unto its own," without the "manpower or resources" to comply with OPRA requests, the NJSPCA asks that it be declared exempt from OPRA requirements or that it be permitted to charge a fee for labor costs.[4] It also asserts it should not be responsible for counsel fees to plaintiff as it acted in good faith in handling the OPRA request, and it should not have to pay in excess of $42,000 out of funds that are private donations and municipal fines obtained, and used, for the enforcement of animal cruelty laws.
*80 It is well established that, in enacting OPRA, the Legislature declared that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-1. OPRA's broad public policy favors public access to government records, and serves to "maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 293, 166 A.3d 1140 (2017) (quoting Mason v. City of Hoboken, 196 N.J. 51, 64-65, 951 A.2d 1017 (2008) ).
OPRA's disclosure requirements apply to public agencies. N.J.S.A. 47:1A-1.1 defines public agency to mean:
any of the principal departments in the Executive Branch of State Government, and any division, board, bureau, office, commission or other instrumentality within or created by such department; the Legislature of the State and any office, board, bureau or commission within or created by the Legislative Branch; and any independent State authority, commission, instrumentality, or agency. The term[ ] also mean[s] any political subdivision of the State or combination of political subdivisions, and any division, board, bureau, office, commission or other instrumentality within or created by a political subdivision of the State or combination of political subdivisions, and any independent authority, commission, instrumentality or agency created by a political subdivision or combination of political subdivisions.
Although at times during the course of this litigation NJSPCA has asserted it is not a public agency, the organization conceded to the trial court that it was a public agency under the statutory definition. Before this court, NJSPCA describes itself as a public agency that, because of its unique structure, is not subject to OPRA.
A public agency may be an "instrumentality ... created by a ... combination of political subdivisions." Fair Share Hous. Ctr., Inc. v. N.J. State League of Municipalities, 207 N.J. 489, 503, 25 A.3d 1063 (2011) (alterations in original) (citing N.J.S.A. 47:1A-1.1 ) (holding that the League was a public agency under N.J.S.A. 47:1A-1.1 despite being a non-profit, unincorporated association because it was "an 'instrumentality' of a 'combination of political subdivisions.'"). Here, the NJSPCA is an instrumentality because *81 it functions on the State's behalf to "achieve an end or purpose," namely, to prevent animal cruelty. See N.J.S.A. 4:22-11.2(a). The NJSPCA was created by the Legislature and is controlled by the State. The Legislature determined the NJSPCA must consist of fifteen people: twelve elected by the organization's members and three appointed by the Governor. Ibid. The agency *326 is required to submit annual reports to the State Legislature and Attorney General. N.J.S.A. 4:22-11.2(b) to (c).
In addition, the NJSPCA performs a government function by assisting state and local governments with the investigation of animal cruelty and enforcement of animal cruelty laws throughout the State. The agency has the police power to appoint humane law enforcement officers who are commissioned and trained by the state police. N.J.S.A. 4:22-11.1 ; N.J.S.A. 4:22-11.12. The NJSPCA clearly meets the definition of a public agency under OPRA.
Having determined that the NJSPCA is a public agency for purposes of OPRA's disclosure requirements, we now address its assertion that it should not be subject to OPRA because it is not a recipient of public funding. While it is true that there is no "line item" in the state budget for the NJSPCA, and it does not receive tax dollars directly, it collects the fines and penalties assessed on violators of animal cruelty laws. N.J.S.A. 4:22-55.[5] The organization also may collect funds by seizing and auctioning animals and vehicles, N.J.S.A. 4:22-53, and by serving as a receiver for animal shelters with animal cruelty violations. N.J.S.A. 4:22-50.1. The Legislature, therefore, has provided a source of funding to the agency through the allocation of fines and penalties assessed on violators of animal cruelty laws.
We briefly address NJSPCA's argument that it should be permitted to charge an hourly labor rate for compiling and producing the requested documents. Although the argument was not raised in defendant's appellate brief, it was presented to and *82 considered by the trial court. N.J.S.A. 47:1A-5 provides rates of reimbursement for a public agency producing documents. If the agency can demonstrate that its actual costs exceed the set rates, it may be reimbursed for the actual cost of duplicating the record, defined as "the cost of materials and supplies used to make a copy of the record." N.J.S.A. 47:1A-5(b)(1).
Subsection (c) allows for a reasonable special service charge only if the public agency can show that the requested "record cannot be reproduced by ordinary document copying equipment in ordinary business size or involves an extraordinary expenditure of time and effort to accommodate the request." N.J.S.A. 47:1A-5(c). The trial judge found NJSPCA unable to meet this high threshold, noting that the subject "requests are not of the nature where this [c]ourt can state that they are beyond the scope of an ordinary demand." The record supports the trial judge's finding that plaintiff's request was not burdensome, and that compliance would not require an "extraordinary" expenditure of time. As a result, defendant has not met the prerequisite burden to assess a special labor charge for this request.
The NJSPCA urges this court to vacate the award of counsel fees to plaintiff, reiterating that it is not subject to OPRA and asserting that it does not have the funds to satisfy a fee award.
"A requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee." N.J.S.A. 47:1A-6. If a court determines "the custodian unjustifiably denied access to the record in question," the requestor is entitled to attorney's fees. New Jerseyans for a Death Penalty Moratorium v. N.J.Dep't of Corr., 185 N.J. 137, 153, 883 A.2d 329 (2005) (citation omitted).
Here, plaintiff is a prevailing party because defendant has not denied access to *327 its records on the basis of any exemption in OPRA. The trial court reviewed the detailed billing statements and certifications provided by plaintiff's counsel and determined *83 the number of hours expended and hourly rate were reasonable. The judge denied a lodestar enhancement.
While we recognize the award of $42,147.50 is a significant portion of the NJSPCA's budget, we note that defendant not only failed to comply with plaintiff's OPRA request, it also did not even respond to the request until served with this litigation. Thereafter, defendant argued it was not a public agency, and it failed to craft a proposal by which it could meet OPRA demands even when directed to do so by the court. Defendant's failure to comply with court orders required further motions, briefs and court appearances. We are satisfied the judge did not abuse his discretion in awarding counsel fees.
Affirmed.

N.J.S.A. 47:1A-1 to -13.

A public agency is subject to OPRA disclosure requirements and is defined as,
any of the principal departments in the Executive Branch of State Government, and any division, board, bureau, office, commission or other instrumentality within or created by such department; the Legislature of the State and any office, board, bureau or commission within or created by the Legislative Branch; and any independent State authority, commission, instrumentality or agency. The terms also mean any political subdivision of the State or combination of political subdivisions, and any division, board, bureau, office, commission or other instrumentality within or created by a political subdivision of the State or combination of political subdivisions, and any independent authority, commission, instrumentality or agency created by a political subdivision or combination of political subdivisions.
[N.J.S.A. 47:1A-1.1.]

The decision was memorialized in a September 23, 2015 order.

In its appellate brief, NJSPCA did not argue for permission to charge a fee to comply with OPRA. Counsel raised the issue during oral argument.

In its 2012 tax return, the NJSPCA reported the collection of fines and restitutions of $101,973.