**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0840-17T3

TOWNSHIP OF TEANECK
and ISSA ABBASI, Teaneck
Custodian of Records,

     Plaintiffs-Appellants,

v.

ELIE C. JONES,

     Defendant-Respondent.

_____

> Argued February 5, 2019 – Decided July 12, 2019
>
> Before Judges Rothstadt, Gilson and Natali.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000014-17.
>
> John L. Shahdanian argued the cause for appellants (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; John L. Shahdanian, of counsel; William F. Rupp, on the briefs).
>
> Walter Michael Luers argued the cause for respondent.

PER CURIAM

Plaintiffs Township of Teaneck and its Custodian of Records, Issa Abbasi, appeal from the Chancery Division's (1) March 9, 2017 denial of their application for a preliminary injunction; (2) July 21, 2017 grant of partial summary judgment to defendant Elie C. Jones; (3) August 25, 2017 award of attorneys' fees to defendant;[1] and (4) September 14, 2017 dismissal of their complaint for injunctive relief and declaratory judgment. The complaint sought relief under the Declaratory Judgment Act (DJA), N.J.S.A. 2A:16-50 to -62. It alleged that between November 16, 2016 and January 17, 2017, defendant, with whom Teaneck has a history of contentious litigation, submitted 380 requests under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. Plaintiffs sought a declaration that the requests were an abuse of the OPRA process and constituted harassment, thereby relieving plaintiffs of any obligation to respond to defendant's voluminous requests and entitling them to a permanent injunction prohibiting defendant from submitting any further OPRA requests. In the alternative, they sought permission to assess a special handling fee to be paid by

[1] Although plaintiffs' appellate case information statement identified as an order under appeal the Chancery Division's August 25, 2017 denial of their motion for reconsideration, their brief does not address that portion of the motion judge's order. We therefore consider that challenge to be waived. See N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal").

A-0840-17T3

defendant to reimburse plaintiffs for costs incurred in responding to defendant's OPRA requests.

For the reasons that follow, we dismiss plaintiffs' appeal as moot, except as to the award of counsel fees, which we affirm, substantially for the reason expressed by Judge Robert P. Contillo in his written decision accompanying the order that awarded fees.

A detailed discussion of the matter's procedural history is necessary to give context to our determination. As noted, plaintiffs' complaint was filed in response to defendant's OPRA requests, without plaintiffs ever responding to them as required by OPRA. Plaintiffs alleged that defendant's requests covered "a wide variety of topics dating as far back as the year 2000," included "duplicates and triplicates of previous OPRA requests for which [plaintiffs] had previously responded," and requested "documents which do not exist," or were "so vague and incoherent as not to be susceptible of response." Plaintiffs also alleged the sole motive behind defendant's request was to harass and abuse Teaneck in order to coerce a settlement of defendant's claims in a separate lawsuit.

On January 17, 2017, plaintiffs filed their complaint and simultaneously sought to preliminarily enjoin defendant from filing additional OPRA requests.

3

On February 2, 2017, defendant voluntarily withdrew 290 of his 380 OPRA requests, and filed an answer and counterclaim alleging violations of OPRA and his common law right of access based on plaintiffs' failure to respond to thirty-one of the remaining identified OPRA requests.

At oral argument on March 1, 2017, plaintiffs argued that a preliminary injunction should be ordered under the court's inherent power "to prevent abuse and protect public officials under OPRA" as discussed in our opinion in MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 546 (App. Div. 2005). Defendant argued that the court did not have subject matter jurisdiction to issue the relief that plaintiffs sought, that his voluntary withdrawal of 290 OPRA requests balances the equities in his favor, that a preliminary injunction would amount to a prior restraint on his political speech, and that plaintiffs should have sought relief under the procedures of OPRA section 5(g), N.J.S.A. 47:1A-5(g).

Judge Contillo denied the application. In his twenty-page written decision, the judge applied "standard injunction jurisprudence" and stated that under the law "there does not appear to be a right vested in records custodians to seek affirmative relief against a requestor under OPRA," for "a total ban on OPRA requests" regardless of how frivolous or abusive the requests are.

A-0840-17T3

Therefore, plaintiffs failed to demonstrate a reasonable likelihood of success on the merits of their declaratory judgment action. Further, he found that defendant's OPRA requests did not cause immediate and irreparable harm to plaintiffs because they had a remedy under OPRA -- to deny the request -- and that the potential for plaintiffs' denial of a request to result in an award of attorneys' fees against the municipality did not constitute irreparable harm.

Although the judge acknowledged a "court's inherent power to prevent abuse and to protect the public officials involved in handling and responding to OPRA requests," he was not convinced "at this stage of the litigation" that a restraint was "reasonable or necessary" to plaintiffs addressing "the remaining, un-abandoned OPRA requests." Accordingly, the judge denied plaintiffs' request for preliminary relief.

At a case management conference held on March 29, 2017, the parties agreed to "prioritize" defendant's request and to the entry of an order that required plaintiffs to respond to defendant's thirty-one OPRA requests within forty-five days. The parties later resolved twenty-six of the requests, leaving five in dispute. As to those unresolved requests, on June 5, 2017, defendant filed a motion for summary judgment, arguing that plaintiffs failed to provide

the documents requested according to the timetable created by the March 29 order.

On July 13, 2017, Judge Contillo denied summary judgment as to four of the five OPRA requests. As to the remaining request, which sought copies of "settlement documents and cost[s] to [Teaneck] for all legal settlements for discrimination or any other reason from 2000-2016," the judge held that plaintiffs cannot deny the request on the basis of lack of specificity, the extensive number of third parties who may possess such documents, or the substantial disruption to its operations that fulfilling the request would allegedly cause. In reaching his decision, Judge Contillo relied upon our opinion in Burnett v. Cty. of Gloucester, 415 N.J. Super. 506 (App. Div. 2010), and the fact that plaintiffs failed to provide any credible evidence that they attempted to reach an accommodation with defendant pursuant to N.J.S.A. 47:1A-5(g). He ordered plaintiffs to comply with defendant's OPRA request or to seek a reasonable accommodation.

On August 1, 2017, defendant moved for an award of attorneys' fees and costs pursuant to N.J.S.A. 47:1A-6 and Rule 4:42-9(a)(8). In his supporting certification of services, defendant's counsel set forth all of the information required under Rule 4:42-9(b), including that which addressed the RPC 1.5(a)

factors, supported by detailed billing records. The records indicated that after a voluntary reduction "for lack of success" of 7.1 hours of attorney time and 2.0 hours of law clerk time, at a total value of $2,528.50, defendant's attorneys sought a total award of $20,647.53.

On August 10, 2017, plaintiffs cross-moved for reconsideration of the judge's denial of their application for a preliminary injunction. They relied upon the New Jersey Supreme Court's August 3, 2017 opinion in Carter v. Doe, 230 N.J. 258 (2017).[2]

On August 24, 2017, after considering the parties' oral arguments, Judge Contillo reconsidered in light of the holding in Carter, and concluded that it did not alter his conclusion that a public entity receiving a burdensome OPRA request cannot seek preliminary relief in the courts. Rather, when a public entity is faced with this problem, the proper recourse is to first seek a reasonable

---

[2] In Carter, the Supreme Court held that when an agency denied an OPRA request, only the requestor could seek judicial review. The Court "conclude[d] that section 6 of OPRA's special procedure for review of an agency's denial must prevail over the general DJA statute. Accordingly, after an agency has denied a request, section 6 is triggered, and only the requestor may seek judicial review of the agency's decision." Id. at 278. It then upheld the denial of OPRA requests for firefighters' financial disclosures based upon privacy interests, while not "reach[ing] the question of whether a public entity may file a pre-denial declaratory judgment action when confronted with an unsettled question that has not been litigated before and that implicates OPRA's privacy prong, N.J.S.A. 47:1A-1." Id. at 279.

accommodation from the requestor, and if that does not resolve the issue, then the public entity is to deny the OPRA request.

Addressing defendant's application for attorneys' fees, Judge Contillo found that defendant was entitled to an award of fees under the "catalyst theory" because there was "a factual causal nexus between the litigation and the overall relief ultimately achieved by [d]efendant" and a basis in law for the disclosure of the records. He concluded that being a defendant seeking relief through a counterclaim did not affect the analysis, and that defendant's counterclaims satisfied the factual-nexus and basis-in-law requirements.

According to the judge, the cost for time expended by defendant's attorney in opposing the relief sought by plaintiffs was recoverable because plaintiffs' application was "at variance with OPRA, and . . . [caused] production of the lion's share of unwithdrawn OPRA requests." The judge would not award the fees associated with "unsuccessfully advocating for production of records . . . as to which [Teaneck], substantially prevailed on the merits." For that reason, the judge further reduced the award to $19,098.00 in attorneys' fees and $826.03 in costs after finding that counsels' rates were "fair and reasonable, and that the quantum of hours overall [were] reasonable and proportionate, and the expenses fair, reasonable and customary."

A-0840-17T3

On September 12, 2017, plaintiffs and defendant reached a settlement as to how plaintiffs would respond to defendant's remaining OPRA request. Accordingly, at a case management conference on September 14, 2017, plaintiffs' counsel advised Judge Contillo that the parties agreed upon "a reasonable accommodation" and plaintiffs were in the process of responding to defendant's request.[3] Defendant asked for the dismissal of the parties' remaining claims and plaintiffs did not object or take any action to preserve any claims. Judge Contillo entered the order dismissing plaintiffs' complaint and defendant's counterclaim with prejudice. This appeal followed.

On appeal, plaintiffs raise three arguments: (1) they were entitled to injunctive and declaratory relief "to prevent abuse under OPRA," which the judge had "inherent power" to grant and which was authorized by the DJA; (2) their denial of defendant's one OPRA request was proper because it was "overbroad," lacked specificity, and because of its timespan, would be over-burdensome for plaintiffs to attempt to respond; and (3) defendant was not entitled to attorneys' fees because he was not a "prevailing party" as plaintiffs

---

[3] We understand that plaintiffs have supplied in excess of four thousand pages of records in accordance with their agreement and that they entered into a consent order staying payment of the awarded counsel fees pending appeal.

A-0840-17T3

did not reject his request and, even if defendant was entitled to fees, the award was "excessive in light of the limited relief granted."

We conclude that plaintiffs' first two contentions are now moot. "Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Stop & Shop Supermarket Co., LLC v. Cty. of Bergen, 450 N.J. Super. 286, 291 (App. Div. 2017) (finding an OPRA requestor's claim moot where the records were provided before the requestor filed a DJA action) (quoting Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010)). "[F]or reasons of judicial economy and restraint, courts will not decide cases in which the issue is hypothetical, [or] a judgment cannot grant effective relief[.]" Ibid. (alterations in original) (quoting Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993)).

"An issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Comando v. Nugiel, 436 N.J. Super. 203, 219 (App. Div. 2014) (quoting Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006)). When parties to a litigation resolve the original issue in their case, the matter is technically moot. De Vesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring); see also

10

Matthew G. Carter Apartments v. Richardson, 417 N.J. Super. 60, 67 (App. Div. 2010). "On occasion, however, courts have decided an otherwise moot appeal 'where the underlying issue is one of substantial importance, likely to reoccur but capable of evading review.'" Betancourt, 415 N.J. Super. at 311 (quoting Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996)); see also Carter, 230 N.J. at 279.

In Stop & Shop Supermarket Co., LLC, we considered the concept of mootness in the context of a DJA action filed by a requestor of records. We stated the following:

> [T]he remedy of a declaratory judgment is circumscribed by the salutary qualification that the jurisdiction of the courts may not be invoked in the absence of an actual controversy. [W]here the issue is moot, declaratory judgment will not lie because of the absence of an actual controversy. Because Stop & Shop received the records, its right to receive them is a moot issue, and it has no entitlement to proceed under the [DJA].
>
> [Stop & Shop Supermarket Co., LLC, 450 N.J. Super. at 294 (alterations in original) (citations and internal quotation marks omitted).]

In this DJA matter, Teaneck has supplied the requested records. It is undisputed therefore that the parties resolved through agreement all of the issues regarding defendant's OPRA requests once plaintiffs' applications for

preliminary restraints and declaratory relief were denied. Although Judge Contillo later granted partial summary judgment, the relief awarded was simply to direct plaintiffs to either produce the documents, or negotiate a reasonable accommodation, or deny defendant's one remaining request. The judge was never asked to rule on whether a permanent injunction was warranted as demanded by plaintiffs. Instead, the parties worked out a resolution and they ultimately agreed to the dismissal of their claims with prejudice.

We do not believe that this moot appeal requires our attention because it is "one of substantial importance, likely to reoccur but capable of evading review." For that reason, plaintiffs' arguments do not warrant our consideration where granting relief to them, if we were so inclined, would no longer be of any value to the parties under the present circumstances, as there is no dispute about defendant's OPRA request.

We therefore address only plaintiffs' challenge to Judge Contillo's award of counsel fees to defendant. Plaintiffs argue that defendant was not a "prevailing party" under OPRA because plaintiffs never denied defendant's OPRA requests, but rather filed their complaint to enjoin defendant's abusive use of OPRA. According to plaintiff, because defendant's initial requests were harassing, he cannot be considered a prevailing party. With regard to the one

OPRA request about which the judge required a response or for the parties to resolve, plaintiffs concede that they denied defendant's request, but they argue defendant was afforded only limited relief and the fee award should be reduced to reflect this fact. We disagree with plaintiffs' contentions.

Whether OPRA applies to a litigant's application for fees is a "legal conclusion[] subject to [our] de novo review." Wronko v. N.J. Soc'y for Prevention of Cruelty to Animals, 453 N.J. Super. 73, 79 (App. Div. 2018) (citing O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 379 (App. Div. 2009)). If it does, we review awards of counsel fees for an abuse of discretion. McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007). Determinations regarding counsel fees "will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Ibid. (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)).

An OPRA "requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee." N.J.S.A. 47:1A-6. A requestor is entitled to attorneys' fees "[i]f the court determines that the custodian [of the record] unjustifiably denied access to the record in question[.]" New Jerseyans for a Death Penalty Moratorium v. N.J. Dep't of Corr., 185 N.J. 137, 153 (2005); see also Wronko, 453 N.J. Super. at 82.

The purpose of the fee shifting provision of OPRA is to ensure "that plaintiffs with bona fide claims are able to find lawyers to represent them[,] . . . to attract competent counsel in cases involving an infringement of statutory rights[,] . . . and to ensure justice for all citizens." Coleman v. Fiore Bros., Inc., 113 N.J. 594, 598 (1989).

Our courts use the "catalyst theory" to determine whether a plaintiff is a prevailing party in a litigation. A plaintiff must demonstrate: "(1) 'a factual causal nexus between plaintiff's litigation and the relief ultimately achieved'; and (2) 'that the relief ultimately secured by plaintiffs had a basis in law.'" Mason v. City of Hoboken, 196 N.J. 51, 76 (2008) (citing Singer v. State, 95 N.J. 487, 494 (1984)).

Applying those guiding principles, we conclude that Judge Contillo correctly determined defendant was a prevailing party. In this case, there was a factual causal nexus between defendant's counterclaims and the ultimate agreement between the parties to fulfill those requests. Furthermore, there was a basis in law for the relief granted to defendant, as the judge found that plaintiffs and defendant needed to reach a "reasonable accommodation" in accordance with N.J.S.A. 47:1A-5(g). Notably, we agree with the judge's determination that plaintiffs' filing of a DJA complaint without responding to defendant's initial

14

request by invoking OPRA and seeking a reasonable accommodation or denying the request, resulted in defendant realizing costs for legal fees to respond to plaintiffs' attempt to avoid producing any records to which he should not have been exposed and which OPRA does not contemplate if as here a requestor prevails. See N.J.S.A. 47:1A-6 ("A requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee" (emphasis added)).

Turning to the judge's determination of the amount of counsel fees awarded, we discern no abuse of discretion. In determining the amount of the award, a court must calculate the "lodestar," which is the number of hours reasonably expended by the successful party's counsel, multiplied by a reasonable hourly rate. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009). In calculating the "lodestar," the court considers:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

[Id. at 387 (citing R.P.C. 1.5(a)).]

The lodestar may be reduced "if the level of success achieved in the litigation is limited as compared to the relief sought." Death Penalty Moratorium, 185 N.J. at 154 (quoting Rendine v. Pantzer, 141 N.J. 292, 336 (1995)). An award of counsel fees should not, however, be reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Ibid. (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)).

To determine a prevailing requestor's degree of success, a court "should conduct a qualitative analysis that weighs such factors as the number of documents received versus the number of documents requested, and whether the purpose of [] OPRA was vindicated by the litigation." Id. at 155. "[S]uccess under [] OPRA -- even a high degree of success -- might be acquiring that one smoking gun record hidden amongst hundreds of pages or . . . it may be the absence of any records." Ibid. (internal quotation marks omitted).

16

Judge Contillo found that counsel's hourly rates and the number of hours expended by counsel were reasonable. Consequently, he awarded defendant approximately ninety percent of the fees sought, crediting plaintiffs more than the amount deducted by defendant's counsel for time spent seeking the production of the four categories of records to which the judge found on summary judgment defendant was not entitled.

The record demonstrates that the application for fees and counsel's certification of services were thorough. The certification outlined counsel's qualifications, hourly rate, and compensation in similar matters, and provided details about the work counsel performed and the time expended. Accordingly, we discern no abuse of discretion in the amount of fees and costs awarded.

Affirmed in part; dismissed as moot in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0840-17T3