**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5356-18T2

LAWRENCE JUSTIN MILLS,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
DIVISION OF STATE POLICE
and DAVID ROBBINS,

     Defendants-Respondents.

_____

> Argued telephonically July 13, 2020 –
> Decided August 3, 2020
>
> Before Judges Suter and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2491-18.
>
> Donald M. Doherty, Jr. argued the cause for appellant.
>
> Suzanne M. Davies, Deputy Attorney General, argued the cause for respondents (Gurbir S. Grewal, Attorney General, attorney; Raymond R. Chance, Assistant Attorney General, of counsel; Suzanne M. Davies, on the brief).

PER CURIAM

The sole issue in this appeal is the quantum of attorney's fees to which plaintiff Lawrence Justin Mills is entitled as a result of his partial success in obtaining a declaratory judgment requiring defendant, the New Jersey State Police (NJSP), to produce certain documents related to his arrest under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access. The trial court reduced plaintiff's fee request from $13,248 to $2376 and failed to award $362.95 in costs. We affirm the fee award but remand with respect to plaintiff's request for costs as the court did not address the issue.

I.

According to the certification of defendant and NJSP custodian of records Lieutenant David Robbins, plaintiff was arrested on November 2, 2017 for theft by deception for allegedly "paying . . . individuals to open online internet gaming accounts to receive . . . new account bonuses and using those . . . bonuses to obtain $6000 to which he was not entitled." After the charges were dismissed, plaintiff served the NJSP on October 2018 with a number of requests under OPRA for records related to his arrest.

Robbins received plaintiff's requests and attested that because the charges involved internet gaming fraud, a "highly complex and sensitive crime[,]" he

was required to "extensive[ly] review . . . the records and coordinat[e] with various law enforcement agencies." Robbins sought two-week extensions to respond to plaintiff's requests on October 12 and 26, 2018. He sought yet another extension on November 14, 2018 which plaintiff promptly denied in a November 14 responsive email. In that communication, plaintiff advised Robbins that he did not consent to any further extensions. Instead of responding to the initial OPRA requests, or plaintiff's November 14, 2018 email, Robbins instead sought another extension until December 12th. Three days later, on December 3, 2018, plaintiff filed a verified complaint and order to show cause.

After defendants failed to appear at a December 20, 2018 scheduled teleconference, the court issued an order that day rescheduling the conference for January 7, 2019. On January 8, 2019, the court issued a case management order directing defendants to respond to plaintiff's OPRA requests by January 11th and to address the bases for refusing to produce any document. It also directed defendants to provide a privilege log and a copy of any withheld document for in camera review.

On January 11, 2019, the NJSP denied plaintiff's requests, filed opposition to the verified complaint, and provided the court with the entire investigation file regarding plaintiff's arrest for in-camera review. The NJSP also claimed it

did not have responsive records to certain of defendant's requests and denied others relying on N.J.S.A. 47:1A-1.1, claiming a number of documents constituted exempt criminal-investigatory, security, and surveillance records.

After plaintiff challenged defendants' response, the court heard oral argument on February 5, 2019 and ordered defendants to produce a "Vaughn"[1] index which defendants subsequently produced for the entire investigatory file. In that index, defendants did not assert the criminal-investigatory exemption for the complaint/summons, arrest report, affidavit of probable cause, or dismissal documents. The NJSP asserts on appeal that it did not previously provide these records to plaintiff as they were not specifically requested, and they were already in his possession from the criminal proceedings.

On April 16, 2019, after considering the Vaughn index, the parties' supplemental briefing and reviewing the documents in camera, the court issued a comprehensive order that granted in part and denied in part plaintiff's requests.

---

[1] "A Vaughn index is comprised of affidavits containing a 'relatively detailed' justification for the claim of privilege being asserted for each document. The judge analyzes the index to determine, on a document-by-document basis, whether each such claim of privilege should be accepted or rejected." Paff v. Div. of Law, 412 N.J. Super. 140, 161 n.9 (App. Div. 2010) (citing Vaughn v. Rosen, 484 F.2d 820, 826-27 (D.C. Cir. 1973)). The affidavits "ordinarily" omit "excessive reference to the actual language of the document." Vaughn, 484 F.2d at 826-27.

A-5356-18T2

The court concluded defendants correctly denied plaintiff's requests under OPRA for "[computer aided dispatch (CAD)] reports, video footage of his incarceration . . . , mug shots, and records of searches of his [i]Phone and MacBook" because no such records existed. The court also found that the remaining responsive records were properly denied under the criminal-investigatory records exemption of OPRA, except for the "[c]omplaint/[s]ummons, [a]ffidavit of [p]robable [c]ause, [a]rrest [r]eport . . . , and documents confirming the dismissal of the charges." Plaintiff's counsel conceded that he had previously been provided the complaint, probable cause affidavit, and the letter dismissing the charges, but claimed the two-page arrest report was never produced.[2] The court accordingly ordered the NJSP to provide plaintiff with the arrest report.

---

[2] In plaintiff's reply brief, he maintains he "did not have the records when the decision was rendered" and "did not know [what] the records he would be getting included . . . because [defendants] refused to tell him what was being withheld." In its June 28, 2019 oral decision, however, the court stated that "[t]he complaint/summons, and the affidavit of probable cause, and the dismissal record, while they were public records under OPRA, . . . plaintiff conceded that he was in possession of them." The court further noted in its April 16, 2019 order that "[c]ounsel for [plaintiff] agreed that the [c]omplaint/[s]ummons and [a]ffidavit of [p]robable [c]ause had earlier been provided to [plaintiff], but asserted at argument that the arrest report had not previously been provided." In light of the court's comments and plaintiff's failure to include the February 5, 2019 oral argument transcript in the appendix, we find no record support for

The court next considered plaintiff's requests under the common law right of access and determined that plaintiff was entitled to an additional forty-six pages of records, including certain gaming receipts, a redacted version of the investigation report and statements from certain witnesses. The court denied plaintiff's requests for approximately 120 pages of additional documents, including surveillance footage from the Golden Nugget casino.

After the NJSP produced the ordered records, plaintiff filed an application seeking $13,248 in attorney's fees and $362.95 in costs, which reflected expenses related to filing fees for the complaint and order to show cause, copies, and postage. As noted, the court granted plaintiff's application in part and awarded a total of $2376 in counsel fees and did not address plaintiff's request for costs.

The court determined that plaintiff was a partially prevailing party under OPRA as defendant failed to produce plaintiff's arrest report, but was unsuccessful as to the remaining records, including the complaint, probable cause affidavit and dismissal documents, as those materials were already in his possession. The court also concluded that although plaintiff was entitled to fees

plaintiff's claim. See Spinks v. Twp. of Clinton, 402 N.J. Super 465, 474-75 (App. Div. 2008) (It is plaintiff's "responsibility to refer us to specific parts of the record to support their argument.").

6

under OPRA as a partially successful litigant, his success in receiving documents under the common law did not warrant the award of fees as there "wasn't anything here to justify going outside of the American [R]ule to give a counsel fee for a common law cause of action."

When determining the fee award, the court considered the Rules of Professional Conduct (RPC) 1.5 factors and found the issues presented in the verified complaint were not novel and the requisite time necessary to address the issues was not extensive, particularly for plaintiff's counsel who was an experienced OPRA attorney and whose brief contained "boilerplate" legal arguments. The court also noted, however, that defendants failed to respond in an appropriate and timely fashion to plaintiff's initial OPRA request, the initial conference, and imposed numerous unilateral extensions. The court recognized that plaintiff was successful in obtaining the arrest report and in compelling production of the Vaughn index and ultimately concluded plaintiff's minimal success under OPRA warranted a fee award of $2376, which represented 6.6 hours of work at the reasonable rate of $360 per hour.

In determining its fee award, the court declined to award fees related to plaintiff's efforts to obtain documents under the common law right of access. The court explained that the "the issue of counsel fees under the common law

was not before the [Mason v. Hoboken, 196 N.J. 51 (2008)] court and was not decided by the Supreme Court."  The court concluded that while plaintiff's counsel was entitled to counsel fees as plaintiff was a prevailing party under OPRA, plaintiff's counsel was "not entitled to fees for the work that led to the release of documents under the common law."

This appeal followed.

## II.

On appeal, plaintiff raises two primary arguments.  First, he contends that although a 45% (16.6 hours) or 30% (11.1 hours) reduction would have been "understandable[,]" the court's cutting 82% of his hours from 36.8 to 6.6 resulting in a reduction of his requested fee from $13,248 to $2376 was "excessive."  Second, plaintiff contends that the court erred in denying his request for $362.95 in costs under Rule 4:42-8.  We disagree that the court abused its discretion in reducing plaintiff's fee request and remand for the court to resolve in the first instance his request for costs.

Whether OPRA applies to a litigant's application for fees is a "legal conclusion[] subject to [our] de novo review."  Wronko v. N.J. Soc'y for Prevention of Cruelty to Animals, 453 N.J. Super. 73, 79 (App. Div. 2018) (citing O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 379 (App. Div.

2009)).  If it does, we review awards of counsel fees for an abuse of discretion. McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007). Determinations regarding counsel fees "will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Ibid. (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-44 (2001)).

"Subject to certain categorical exceptions provided by statute or court rule, New Jersey courts abide by the American [R]ule that all parties in civil litigation pay their own legal fees. R. 4:42-9.  The fee-shifting provision within OPRA, N.J.S.A. 47:1A-6, constitutes such an exception to the American [R]ule." Smith v. Hudson County Register, 422 N.J. Super. 387, 393 (App. Div. 2011).  Pursuant to N.J.S.A. 47:1A-6, an OPRA "requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee" upon a determination by the court that the "custodian [of the record] unjustifiably denied access to the record in question[.]"  New Jerseyans for a Death Penalty Moratorium v. N.J. Dep't of Corr., 185 N.J. 137, 153 (2005); see also Wronko, 453 N.J. Super. at 82.

The purpose of the fee shifting provision of OPRA is to ensure "that plaintiffs with bona fide claims are able to find lawyers to represent them[,] . . . to attract competent counsel in cases involving an infringement of statutory

9

rights[,] . . . and to ensure justice for all citizens." Coleman v. Fiore Bros., Inc., 113 N.J. 594, 598 (1989). Our courts use the "catalyst theory" to determine whether a plaintiff is a prevailing party in a litigation. A plaintiff must demonstrate: "(1) 'a factual causal nexus between plaintiff's litigation and the relief ultimately achieved'; and (2) 'that the relief ultimately secured by plaintiffs had a basis in law.'" Mason, 196 N.J. at 76 (citing Singer v. State, 95 N.J. 487, 494 (1984)).

Applying these guiding principles, we conclude that the court correctly determined defendant was a partially prevailing party under OPRA as he obtained the arrest report which should not have been withheld. A clear factual nexus existed between plaintiff's litigation and the production of the document. Furthermore, there was a basis in law for the relief granted to defendant under OPRA.

Turning to the judge's determination of the amount of counsel fees awarded, we discern no abuse of discretion. In determining the amount of the award, a court must calculate the "lodestar," which is the number of hours reasonably expended by the successful party's counsel, multiplied by a reasonable hourly rate. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009). In calculating the "lodestar," the court considers:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

[Id. at 387 (citing RPC. 1.5(a)).]

The lodestar may be reduced "if the level of success achieved in the litigation is limited as compared to the relief sought." Death Penalty Moratorium, 185 N.J. at 154 (quoting Rendine v. Pantzer, 141 N.J. 292, 336 (1995)). An award of counsel fees should not, however, be reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Ibid. (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)).

A-5356-18T2

To determine a prevailing requestor's degree of success, a court "should conduct a qualitative analysis that weighs such factors as the number of documents received versus the number of documents requested, and whether the purpose of [ ] OPRA was vindicated by the litigation." New Jerseyans, 185 N.J. at 155. "[S]uccess under [ ] OPRA – even a high degree of success – might be acquiring that one smoking gun record hidden amongst hundreds of pages or . . . it may be the absence of any records." Ibid. (internal quotation marks omitted).

Here, the court concluded that counsel's hourly rates were reasonable but that the number of hours expended by counsel were excessive "because of the minimal success . . . in terms of compelling an answer which only was brought about by virtue of the lawsuit." Specifically, of the twenty-seven groups of records listed in the Vaughn index that contained over 170 pages of documents as well as numerous DVD interviews and surveillance tapes, plaintiff succeeded in obtaining only a two-page arrest report under OPRA. The remaining records he obtained were released under the common law.

The court further found that "there was not a novelty of issues here" and that the time and labor required were "not extensive." The court emphasized that plaintiff's counsel "is a very experienced OPRA attorney" and that "from reviewing the papers in this case and other cases[,] . . . a lot of boilerplate legal

argument [was] used." Consequently, after evaluating plaintiff's limited success and the amount of work performed, she awarded defendant approximately 18% of the fees sought. We are satisfied from our conscientious review of the record that the trial court conducted the proper qualitative analysis and discern no abuse of discretion in its decision as the court's factual findings are amply supported by the record.

We are unpersuaded by plaintiff's reliance on Silva v. Autos of Amboy, Inc., 267 N.J. Super. 546, 559 (App. Div. 1993), to support his argument that the trial court improperly relied on a mathematical approach to reduce the fee by "employ[ing] a nearly straight line percentage breakdown of the fee sought awarded." In Silva, we rejected the trial court's calculation of the fee which was obtained by mechanical division of the lodestar based on the number of counts in the complaint. We reiterated the notion that "the court must focus on the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation'" and that "[i]f a plaintiff achieves excellent results in a lawsuit, counsel fees should not be reduced on the ground that the plaintiff did not prevail on each claim . . . ." Id. at 556. Accordingly, we held that it was error for the trial judge to award plaintiff one-seventh of the

reasonable fees incurred because she prevailed on only one count of a seven count complaint. Id. at 559.

As our Supreme Court has more recently explained:

> We reject "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" because "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." Stated differently, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."
>
> [New Jerseyans, 185 N.J. at 154 (citations omitted).]

Here, the court did not simply count the number of documents requested and award fees based on a mathematical ratio of what plaintiff actually obtained under OPRA. To the contrary, the court's ruling tracked this court's direction in Silva and "consider[ed] plaintiff's limited success and other pertinent factors," 267 N.J. Super at 560, in calculating the fee. Indeed, in addition to the arrest report that plaintiff obtained, the court also took into consideration RPC 1.5 factors as well as the fact that plaintiff "was persistent and got the Vaughn index" and "prevailed upon getting a response from the defendants, even though it was a denial."

Furthermore, plaintiff's contention that he prevailed in the entire case as he obtained "a few [records] under OPRA and dozens more under the common

14

law right of access" is unpersuasive. And in this regard, we find no error in the court's reliance on <u>Mason</u> and the American Rule in denying plaintiff's fee request related to his limited success under the common law right of access. Although N.J.S.A. 47:1A-6 expressly permits an award of counsel fees under OPRA, there is no statutory authority for such an award to a prevailing party in a common law right of access to public records lawsuit. Further, the <u>Mason</u> court did not state that it was abrogating the American Rule and establishing a new class of cases where attorneys' fees could be awarded to a prevailing plaintiff. Instead, the Court directed trial courts to conduct a "fact-sensitive inquiry on a case-by-case basis" to determine when an award of fees is appropriate. <u>Mason</u>, 196 N.J. at 79.

If a plaintiff has achieved "'only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" <u>Rendine</u>, 141 N.J. at 336 (quoting <u>Hensley</u>, 461 U.S. 424, 436 (1983)); <u>see also</u> <u>Litton Indus., Inc.</u>, 200 N.J. at 386-88; <u>R.</u> 4:42-9. Thus, trial courts are authorized to '"attempt to identify specific hours . . . that should be eliminated [or] simply reduce the award to account for the limited success.'" <u>Szczepanski v. Newcomb Med. Ctr., Inc.</u>, 141 N.J. 346, 356 (1995) (alterations in original).

Here, as noted, the court clearly conducted such a fact-based analysis when reducing plaintiff's fee request. Plaintiff's initial request for documents was denied by the NJSP either because no such records existed or based on exceptions for criminal investigatory records and that certain documents contained surveillance information that would compromise security. Other documents were not produced as they contained personal identifying information, or because plaintiff already possessed documents through his criminal prosecution.

After an in camera review, the court determined that all documents other than the complaint/summons, affidavit of probable cause, arrest report, and those related to dismissal were "protected from disclosure by the criminal investigatory records exception of OPRA." And, of the four documents not covered by that exception, the court found that NJSP already provided plaintiff with all except the arrest report.

As to the documents released under the common law, the trial court determined that while defendant was entitled to over forty pages of records, a redacted version of the investigation report, and three DVDs of witness interviews, defendants properly withheld over 100 other pages of documents

16

that plaintiff requested.[3]  Again, in light of the court's analysis, we are satisfied that the court did not abuse its discretion in determining the fee award.

III.

With respect to plaintiff's request for $362.95 in costs, Rule 4:42-8 states that "[u]nless otherwise provided by law, these rules or court order, costs shall be allowed as of course to the prevailing party."  If a party prevails, that party

---

[3]  While the trial court notes in its June 28, 2019 oral decision that plaintiff cited to statements in Mason pertaining to the awarding of counsel fees in a common law suit under the catalyst theory, plaintiff fails to raise a similar argument on appeal in either his initial or reply brief.  In fact, plaintiff cites to Mason only in his reply brief and in support of a different legal proposition entirely.  To the extent we can discern such an argument from plaintiff's briefs, we conclude it is waived.  See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").  Were plaintiff to raise such an argument in any event, we note that "[u]nlike a citizen's absolute statutory right of access [under OPRA], a plaintiff's common-law right of access must be balanced against the State's interest in preventing disclosure." Higg-A-Rella, Inc. v. County of Essex, 141 N.J. 35, 46 (1995).  Although a requestor may establish "'a wholesome public interest or a legitimate private interest'" in the public document, id. at 47 (quoting Loigman v. Kimmelman, 102 N.J. 98, 112 (1986)), release is not automatic.  Rather, a court must then engage in a deliberative process that involves consideration of a number of factors in order to determine whether the requestor's interest in access to the document outweighs the State's interest in non-disclosure.  Id. at 46-48.  Therefore, disclosure pursuant to the common law right of access contemplates a fact-specific weighing process that will vary in each situation.  Id. at 49.  Here, we conclude that the NJSP should not be penalized for withholding documents under the assumption that they are not proper for public access as the court determined that a majority of the records for which plaintiff sought access were unquestionably criminal records maintained by the NJSP.

17

should receive costs as a matter of course even if there is an "incomplete success."  Gallo v. Salesian Soc'y, 290 N.J. Super. 616, 660 (App. Div. 1996). "[A] prevailing party may be denied an award of costs only for 'special reasons.'" Knight v. AAA Midatlantic Ins. Co., 394 N.J. Super. 333, 337 (App. Div. 2007) (quoting Schaefer v. Allstate N.J. Ins. Co., 376 N.J. Super. 475, 487 (App. Div. 2005)).

It does not appear from the record that the court ruled on plaintiff's request for costs, which as noted included typical expenses for filing fees, copies, and postage.  Accordingly, on remand, the court should address plaintiff's cost application and if it concludes they are not recoverable in whole or in part, should clearly identify the "special reasons" supporting that conclusion.  See Knight, 394 N.J. Super. at 337 (quoting Schaefer, 376 N.J. Super. at 487).

To the extent we have not addressed any of plaintiff's remaining arguments it is because we conclude they are sufficiently without merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5356-18T2