**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5943-17T2

JANE DOE, individually, and as
Executor of the Estate of decedent,
and THE ESTATE OF DECEDENT,[1]

     Plaintiffs-Appellants,

v.

CITY OF TRENTON, and DWAYNE
HARRIS, in his capacity as Municipal
Clerk and Custodian of Government
Records,

     Defendants-Respondents.

_____

Argued September 9, 2019 – Decided October 7, 2019

Before Judges Fasciale, Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1813-17.

Frank Guaracini, III, argued the cause for appellants (Blaney & Karavan, PC, attorneys; Frank Guaracini, III, of counsel and on the briefs).

---

[1] We have used a fictitious name in the caption in order to protect the identity of the parties involved.

Donald A. Klein argued the cause for respondents (Weiner Law Group LLP, attorneys; Donald A. Klein, of counsel and on the brief).

PER CURIAM

This appeal addresses one of three separate but related civil actions. The first is this lawsuit, in which plaintiffs made their request for documents under OPRA and the common law (the OPRA action). The second is a tort action filed by a separate party, (the separate party action). And the third is a tort action filed by plaintiffs (the torts action). In the torts action, plaintiffs received – under a consent protective order – the requested documents.

Jane Doe, individually and as Executor of the Estate of decedent, and the Estate of decedent (collectively plaintiffs) appeal from three orders. Two of the orders, dated January 5, 2018 and May 3, 2018, denied plaintiffs access to records under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law. The third order, dated August 10, 2018, denied reconsideration. The OPRA judge entered the orders and rendered thorough opinions, with which we substantially agree. We affirm.

I.

In July 2017, plaintiffs requested the documentation from the City of Trenton and the City's clerk (collectively defendants). They sought records regarding a 2016 internal affairs police investigation into decedent's conduct.

On August 22, 2017, defendants issued a letter denying plaintiffs' request for the records. In part, the letter explained that personnel records are exempt from production under OPRA. Plaintiffs filed this action, and the OPRA judge entered an order to show cause (OTSC) directing defendants to appear and show cause as to why judgment should not be entered granting plaintiffs access to the records and awarding attorney's fees.

Following oral argument, the judge rendered an oral opinion denying plaintiffs' OPRA request, but reserving judgment on plaintiffs' common law contentions. The judge "noted the difficulty of assessing [p]laintiffs' [c]ommon [l]aw right of access claim without first reviewing the records responsive to [p]laintiff's request[.]" The judge ordered defendants to submit a Vaughn[2] index and the internal investigation file for an in-camera review.

---

[2] Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

Defendants complied and advised the judge that the City of Trenton would be willing to produce the entire investigation file in the torts action. Thereafter, plaintiffs' counsel notified the judge that, in the torts action, the judge in that case ordered the production of the file to plaintiffs under a consent protective order, which plaintiffs sought to lift.

After conducting an in-camera review of the records, the OPRA judge denied plaintiffs' request for access to the internal investigation records under OPRA and the common law, dismissed plaintiffs' complaint, and rendered a comprehensive oral opinion. In denying the request, the judge balanced the parties' interests and emphasized that plaintiffs successfully obtained the records in the torts action.

Plaintiffs filed a motion for reconsideration. The judge in the tort action filed by plaintiffs partially lifted the consent protective order, thereby giving plaintiffs and counsel the right to use solely the "information contained in the City of Trenton Internal Affairs investigation file" on plaintiffs' motion for reconsideration. In another comprehensive opinion, the OPRA judge denied plaintiffs' motion and balanced plaintiffs' interest against law enforcement's interest in keeping internal affairs investigations confidential.

A-5943-17T2

On appeal, plaintiffs argue:

POINT [I]

DEFENDANTS VIOLATED N.J.S.A. 47:1A-5(i) BY ISSUING AN UNTIMELY DENIAL.

POINT [II]

DEFENDANTS VIOLATED N.J.S.A. 47:1A-5 BY IMPROPERLY DENYING PLAINTIFF[S] ACCESS TO GOVERNMENT RECORDS UNDER THE PERSONNEL RECORDS EXEMPTION.

POINT [III]

THE TRIAL COURT SHOULD HAVE PRECLUDED DEFENDANTS FROM ARGUING THAT THE RECORDS WERE CONFIDENTIAL PURSUANT TO THE ATTORNEY GENERAL GUIDELINES FOR INTERNAL AFFAIRS POLICY AND PROCEDURE.

POINT [IV]

DEFENDANTS FAILED TO COMPLY WITH THE REDACTION METHODOLOGY OF N.J.S.A. 47:1A-5, AND THEREFORE, DEFENDANTS VIOLATED OPRA.

POINT [V]

THIS COURT SHOULD REVERSE THE DECISION OF THE TRIAL COURT AND GRANT PLAINTIFF[S] ATTORNEY'S FEES AS A PREVAILING PARTY IN THIS LITIGATION.

A-5943-17T2

POINT [VI]

THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION AND GRANT PLAINTIFF[S] ACCESS TO THE INV[E]STIGATION FILE PURSUANT TO THE COMMON LAW RIGHT TO ACCESS PUBLIC RECORDS.

II.

"We review de novo the issue of whether access to public records under OPRA and the manner of its effectuation are warranted." Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety, 421 N.J. Super. 489, 497 (App. Div. 2011) (quoting MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 543 (App. Div. 2005)).  But, we are required to "defer to a judge's factual findings in a non-jury matter when those findings are supported by adequate, substantial and credible evidence." Kas Oriental Rugs, Inc. v. Ellman, 394 N.J. Super. 278, 284 (App. Div. 2007) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)).

We reject plaintiffs' contention that defendants violated OPRA by issuing an untimely response to their request for access to the internal investigation records.

New Jersey's "Legislature enacted OPRA with the purpose of 'maximiz[ing] public knowledge about public affairs in order to ensure an

6

informed citizenry and to minimize the evils inherent in a secluded process.'" Drinker Biddle, 421 N.J. Super. at 497 (alteration in original) (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)). "However, 'the right to disclosure is not unlimited, because . . . OPRA itself makes plain that the "public's right of access [is] not absolute." That conclusion rests on the fact that OPRA exempts numerous categories of documents and information from disclosure.'" Ibid. (alteration in original) (quoting Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 284 (2009)). A person who is denied access to government records may challenge the denial in Superior Court. N.J.S.A. 47:1A-6. As to the timeliness of a response, N.J.S.A. 47:1A-5(i) provides in pertinent part:

> Unless a shorter time period is otherwise provided by statute, regulation, or executive order, a custodian of a government record shall grant access to a government record or deny a request for access to a government record as soon as possible, but not later than seven business days after receiving the request, provided that the record is currently available and not in storage or archived. In the event a custodian fails to respond within seven business days after receiving a request, the failure to respond shall be deemed a denial of the request[.]

Here, plaintiffs assert that defendants responded by letter dated August 22, 2017, which would be beyond the seven business days following plaintiffs' request.

Defendants argue that they responded on July 18, 2017, well within the statutorily mandated seven days.

Defendants submitted the certification of a clerk, who works in the office of the Municipal Clerk and Custodian of Records for the City of Trenton and assists with the processing of record requests and responses. The clerk certified that plaintiffs' request was received on July 14, 2017, but the request was wrongly dated July 17. The clerk further certified that the request stated that email was the preferred delivery method and provided an email address. The clerk responded to the request by emailing the identified email address on July 18, 2017. The email from the clerk denying plaintiffs' request was attached to the clerk's certification, and the date on the email was July 18, 2017, at 12:17 p.m. In Jane Doe's affidavit, she denied receiving the email and certified that she searched her email account and could not find the email.

Following oral argument, the OPRA judge noted the conflicting certifications of plaintiff and the clerk, but concluded that both certifications were acceptable. We conclude the record supports the judge's finding that the clerk responded on July 18 via email. Moreover, and as the judge noted, the timeliness of the response is moot because plaintiffs have no OPRA right to the

documents. But even assuming defendants did not timely reply, according to N.J.S.A. 47:1A-5(i), the failure to respond is a denial.

Plaintiffs also contend that defendants violated OPRA because they based their denial on the "personnel files" exemption under N.J.S.A. 47:1A-10, which plaintiffs maintain was "an inappropriate basis for a denial." N.J.S.A. 47:1A-5(g) provides that "[i]f the custodian is unable to comply with a request for access, the custodian shall indicate the specific basis therefor on the request form and promptly return it to the requestor." And N.J.S.A. 47:1A-6 states in pertinent part, "[t]he public agency shall have the burden of proving that the denial of access is authorized by law." Further, N.J.S.A. 47:1A-10 provides:

> Notwithstanding the provisions of [OPRA] or any other law to the contrary, the personnel or pension records of any individual in the possession of a public agency, including but not limited to records relating to any grievance filed by or against an individual, shall not be considered a government record and shall not be made available for public access[.]

Here, the judge concluded that although the reference to the personnel files exemption was erroneous, under the circumstances, it did not invalidate defendants' response. The judge noted that "as counsel for [the City] pointed out, the denial [letter] did reference the Internal Affairs records, and that is the primary basis for the denial here[.]"

9                                                                      A-5943-17T2

Likewise, we also conclude that defendants adequately provided a basis for the denial of plaintiffs' request – that it was an internal affairs record. According to N.J.S.A. 47:1A-5(g), a custodian must indicate the "specific basis" for denying the request for access. Here, defendants did so – it stated that the records were internal affairs and not subject to disclosure.

Moreover, plaintiffs rely on Rivera v. Borough of Roselle Park Custodian of Records, GRC Complaint No. 2007-224 (Nov. 19, 2008) and Blaustein v. Lakewood Police Dep't Custodian of Records, GRC Complaint No. 2011-102 (June 26, 2012) for the proposition that the personnel exemption does not apply to deny a requestor access to internal affairs investigation records under OPRA. Plaintiffs note that in Rivera, the Government Records Council (GRC) stated that "[a] custodian cannot congruously assert both the personnel records exemption and the confidentiality provisions of [the Attorney General's Internal Affairs Policy & Procedure (IAPP)] to deny access[.]" Rivera, GRC Complaint No. 2007-224. However, the GRC also said that the custodian "correctly abandoned" her reliance on the personnel exemption, pursuant to N.J.S.A. 47:1A-10. Ibid. And, the GRC ultimately concluded that the custodian lawfully denied the complainant access to the requested records:

> Because the [police department] complied with the provisions of N.J.S.A. 40A:14-181 by promulgating

policy consistent with the Attorney General's [IAPP], and because that statute is a law that contains provisions not abrogated by OPRA pursuant to N.J.S.A. 47:1A-9(a) [sic], the confidentiality provisions of the IAPP governing Index reports within the Police Department's policy restricts public access to the requested records.

[Ibid.]

Plaintiffs argue that in Blaustein, the GRC stated that "internal affairs records are not considered personnel files pursuant to the Attorney General's [IAPP]." But, in Blaustein, the GRC held that even though the exemptions cited by the custodian – the ongoing internal investigation and personnel files exemptions – were not applicable, the records were exempt as internal affairs investigation records under the Attorney General's IAPP. Blaustein, GRC Complaint No. 2011-102. The GRC concluded that the requested records were "exempt from access pursuant to the Attorney General's [IAPP], which classifies these records as confidential[,] and O'Shea v. [Twp.] of W. Milford, 410 N.J. Super. 371 (App. Div. 2009), which clothes the Attorney General's Policy with the force of law for police entities." Ibid.

The same situation applies here – the requested documents are internal affairs investigation records, and they are confidential and exempt from disclosure under the Attorney General's IAPP. Even though the custodian here

11

also cited N.J.S.A. 47:1A-10, the personnel files exemption, as a reason for denying the request, the August 22 letter correctly explained that the records were internal affairs records.

Plaintiffs next argue that defendants violated OPRA by failing to comply with statutory redaction requirements. In support of their argument, plaintiffs rely on N.J.S.A. 47:1A-5(g), which states in pertinent part:

> If the custodian of a government record asserts that part of a particular record is exempt from public access pursuant to [OPRA] as amended and supplemented, the custodian shall delete or excise from a copy of the record that portion which the custodian asserts is exempt from access and shall promptly permit access to the remainder of the record.

Plaintiffs assert that defendants violated this statute and made a "blanket denial of access . . . without complying with the applicable redaction methodology[.]"

Plaintiffs' reliance is misplaced. The part of the statute that plaintiffs cite relates to when a custodian asserts that part of a record is exempt. In that case, the custodian must delete or redact the part of the record that is exempt and provide the remainder. But, here, the City clerk did not assert that part of the records were exempt; rather, the clerk said that all of the internal investigation records were exempt.

Plaintiffs also contend that they are entitled to attorney's fees. In pertinent part, N.J.S.A. 47:1A-6 provides, "[i]f it is determined that access has been improperly denied, the court or agency head shall order that access be allowed. A requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee." That is, "[i]f the court determines that the custodian unjustifiably denied access to the record in question, he or she is entitled to a 'reasonable attorney's fee.'" New Jerseyans for a Death Penalty Moratorium v. N.J. Dep't of Corr., 185 N.J. 137, 153 (2005) (quoting N.J.S.A. 47:1A-6). "Without that fee-shifting provision, 'the ordinary citizen would be waging a quixotic battle against a public entity vested with almost inexhaustible resources. By making the custodian of the government record responsible for the payment of counsel fees to a prevailing requestor, the Legislature intended to even the fight.'" Ibid. (quoting Courier News v. Hunterdon Cty. Prosecutor's Office, 378 N.J. Super. 539, 546 (App. Div. 2005)).

Here, plaintiffs were not improperly denied access to the requested records. The judge did not find that defendants violated OPRA or that plaintiffs were entitled to access the requested records under OPRA. The judge correctly stated, "[o]bviously, if nothing's turned over, there's no counsel fee. If it's turned over, I've already found that there's no basis under OPRA to turn over these

13

documents, so I don't think that this is a case that lends itself to a counsel fee for those reasons."

### III.

We now turn to plaintiffs' common law right to access arguments. Like the determination of an OPRA request, this court reviews the determination regarding the common law right of access de novo. N. Jersey Media Grp., Inc. v. Bergen Cty. Prosecutor's Office, 447 N.J. Super. 182, 194 (App. Div. 2016).

At common law, a citizen has "an enforceable right to require custodians of public records to make them available for reasonable inspection and examination." Irval Realty Inc. v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 372 (1972). The threshold question under the common law right to access is whether the requested records are "public records." O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 386-87 (App. Div. 2009). OPRA explicitly provides no limit to "the common law right of access to a government record, including criminal investigatory records of a law enforcement agency." N.J.S.A. 47:1A-8. "Indeed, historically, '[t]he common law makes a much broader class of documents available than [OPRA], but on a qualified basis.'" O'Shea, 410 N.J. Super. at 386 (alterations in original) (quoting Daily Journal v. Police Dep't of

Vineland, 351 N.J. Super. 110, 122 (App. Div. 2002)).  Here, there is no dispute that the requested records are public records.

After this threshold determination has been made, "a requestor is governed by a two-prong test."  O'Shea, 410 N.J. Super. at 387.  First, the requestor "must 'establish an interest in the subject matter of the material;'" and, second, "the requestor's right to access 'must be balanced against the State's interest in preventing disclosure.'"  Ibid. (quoting Mason, 196 N.J. at 67-68).

Defendants do not dispute the judge's determination that plaintiffs have an interest in the requested records.  The judge found that plaintiff had an interest both in her own capacity as the decedent's widow and in her capacity as the executor of the estate.  The judge stated that plaintiffs' interest was in "developing facts to see if she had a claim against the [c]ity[,] the police department, [or] any other defendants[.]"

Although plaintiffs obtained the records in the torts action under a consent protective order, they now want unbridled access to the records so that they can publish that information.  Plaintiffs allege that the records show, among other things, that the investigation was conducted "half-heartedly."

But the OPRA judge recognized that the judge in plaintiffs' tort case addressed plaintiffs' request to access the same records and plaintiffs' interest in

those records.  The OPRA judge properly recognized that plaintiffs accessed the requested documents under the consent protective order that adequately protected both parties' interests.

Next, once a requestor has established an interest in the records, which plaintiffs have done here, the requestor's right to access must be balanced against the State's interest in preventing disclosure.  O'Shea, 410 N.J. Super. at 387.  Our Supreme Court has established pertinent factors to consider when balancing the interests:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decision[]making will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative  reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.
>
> [Loigman v. Kimmelman, 102 N.J. 98, 113 (1986).]

16

These factors are not exclusive, and the court may consider "any other relevant factors" when conducting the balancing test. Ibid.

We have already addressed plaintiffs' interest. Defendants have an interest in maintaining confidential internal affairs records. Similar to the AG Guidelines, the internal affairs policy states that "[t]he progress of internal affairs investigations and all supporting materials are considered confidential information." The policy further provides, "[t]he contents of the internal investigation case files will be retained in the Internal Affairs Unit and clearly marked as confidential."

As to the first two Loigman factors, plaintiffs argue that disclosure of the records will not impede agency functions because the investigation is closed. Plaintiffs also argue that the production of the records will not have an effect on any persons who gave information in furtherance of the investigation. Plaintiffs note that the separate party filed a civil action in Superior Court, thereby making their identity and allegations public.

In rendering an oral decision in the OPRA case, the judge acknowledged that "the fact that [the separate party] made [the information] public would suggest then that there is less reason to keep it confidential to encourage [the

separate party] to come forward." However, the judge continued, saying that "the [c]ourt [could not] only stop there" because

> there is the general interest in regard to Internal Affairs proceedings generally that are done by the police and how sensitive they can be, that the [c]ourt has to acknowledge that disclosure generally of complaints made to Internal Affairs and identifying the individual could discourage other citizens from providing information to the government.

The judge properly considered the State's general interest in keeping internal affairs records confidential.

As for the third Loigman factor – "the extent to which agency self-evaluation, program improvement, or other decision[]making will be chilled by disclosure" – plaintiffs assert incorrectly that disclosure of the records will result in a higher level of accountability within the police department. Ibid. The judge determined that this factor was not at issue because the requested records were an investigation into the separate party's allegations, not an investigation into alleged leaks by the internal affairs unit.

The fourth Loigman factor considers "the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers." Ibid. The judge stated that "much of the material may be factual data, but it [is] of an investigatory nature[.]" The judge also noted that some of the information

included in the records was related to the separate party's forensic medical examination, which would be protected. Plaintiffs argue that the information contained in the records (which they obtained in the torts action) is nevertheless unavailable by any other source. But, here, this factor still weighs in favor of nondisclosure because the information contained in the records is mostly investigatory, and much of the information, such as the separate party's medical examination, is sensitive and confidential.

As for the fifth and sixth Loigman factors, which consider any public misconduct or agency disciplinary or investigatory proceedings, the judge noted, again, that the records requested by plaintiffs relate to the investigation into the decedent. That is, the records were not an investigation into the police department's conduct in investigating the decedent.

After balancing all of the factors and in light of the in-camera review, the judge concluded that the State's interest in preventing disclosure and maintaining confidentiality outweighed plaintiffs' right to access the records. The judge concluded,

> [I]t's really the broad general need for confidentiality of these Internal Affairs documents versus the interest of [Jane Doe]. . . .
>
> And to me most critically and in the case that she's filed . . . against the City of Trenton and other

entities, [the judge in that tort case] has already issued the release of the documents under a protective order.

. . . .

[W]hen you balance the interest, the fact that [Jane Doe] is now entitled to the records under civil discovery pursuant to a protective order, diminishes very much her need to have them under the common law.

We similarly conclude that when balancing all of the factors and considering all of the circumstances, the State's interest in maintaining confidential internal affairs records outweigh plaintiffs' interests, especially because plaintiffs have access to the records under the consent protective order.

IV.

Lastly, plaintiffs appeal the OPRA judge's order denying their motion for reconsideration, but they do not specifically address the issue in their merits brief. Plaintiffs do not specifically address why the judge's decision is purportedly an abuse of discretion. Nevertheless, we address the issue.

We review a trial judge's denial of reconsideration only for abuse of discretion. Granata v. Broderick, 446 N.J. Super. 449, 468 (App. Div. 2016), aff'd, 231 N.J. 135 (2017). Reconsideration is "a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice[.]" Palombi v.

Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Governed by Rule 4:49-2, reconsideration is appropriate for a "narrow corridor" of cases in which either the court's decision was made upon a "palpably incorrect or irrational basis," or where "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria, 242 N.J. Super. at 401). In determining whether such an abuse has taken place, a reviewing court should be mindful that a party must not utilize "reconsideration merely because of dissatisfaction with a decision of the [c]ourt." Capital Fin. Co. of Delaware Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (alteration in original) (quoting D'Atria, 242 N.J. Super. at 401).

Following oral argument, the judge denied plaintiffs' motion for reconsideration and stated:

> And again, since she has the documents, even subject to [the consent] protective order, what we were talking about here was the ability to publicize them. And when . . . you are looking at the ability to publicize in terms of the balancing, I think certainly at this point when there's still a chance that that litigation will continue and she . . . will have that opportunity and to ask in that context as the case goes on to make certain

things public, the judge there certainly has a much broader picture than I have here. And just weighing the common law balancing, even looking at it again in light of what she claims, she wants to go public with her version . . . claiming that it was a bad investigation, well, that's before [the judge in plaintiffs' tort case]. And [the judge in that case has] kept the documents under the . . . protective order.

. . . .

And so it's not that [Jane Doe] doesn't have the particularized interest, but the main one was the ability to pursue her rights in civil court. That's been vindicated by the release of the documents to her on the protective order, and her right to go public with her version based upon her analysis of what the documents were . . . does not outweigh the need of law enforcement to keep . . . the investigation file confidential.

We conclude the OPRA judge did not commit an abuse of discretion in denying plaintiffs' motion for reconsideration. Plaintiffs simply reiterated their arguments made earlier. The OPRA judge again noted the balancing between the State's interest and plaintiffs' interest in publishing the information from the records, and the judge concluded that plaintiffs' interest did not outweigh the need to keep internal investigations confidential. Plaintiffs cannot utilize reconsideration because they are dissatisfied with the judge's decision. See Asterbadi, 398 N.J. Super. at 310.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5943-17T2